## WOOLDRIDGE v. WAREING.

No. 7644.   Decided October 8, 1951.   (236 P. 2d 341.)

See 71 C. J., Work and Labor, sec. 19. Acceptance of performance as basis for implied promise. 12 Am. Jur., Contracts, secs. 352 et seq.

*L. O. Thomas, Elias Hansen,* Salt Lake City, for appellant.

*Dan S. Bushnell,* Salt Lake City, for respondent.

HENRIOD, Justice.

This case, tried to the Salt Lake County District Court, resulted in a judgment for $4,300, interest and costs, in

favor of plaintiff. The judgment is affirmed, except as to $300, the parties to bear their own costs on appeal.

Plaintiff sued on two counts: (1) breach of contract and (2) quantum meruit for services rendered to defendant, a manufacturer's representative, for assisting the latter in sales of ice-making equipment. The trial court concluded there was no express contract between the parties, but allowed $4,000 for the reasonable value of services rendered by plaintiff. We believe both conclusions to be justified.

For several years after 1927, the parties, both of whom were sales representatives for industrial concerns, had been roommates in New York. Plaintiff later settled in California, defendant in Ohio. Periodically they corresponded with and visited each other. About 1943 they discussed the merits and sales possibilities of Vogt Co. ice-tube equipment. Defendant became sales representative for the company, moved to Salt Lake City, and in 1947 met plaintiff in California, interesting the latter in a joint endeavor to sell the equipment. For about a year they contacted numerous prospects together, each bearing his own personal expenses. There is evidence that the company knew of and ratified the arrangement. Two sales of equipment were jointly made and 10% of the sales price was paid as commission, which the parties divided equally. A third sale consummated by the parties resulted in disagreement over division of the commision, or profit, but defendant paid plaintiff $1,500, which the latter reluctantly but nevertheless accepted. Talk of another $300 payment to plaintiff, according to the record, did not constitute a binding promise in our opinion, and hence the trial court's judgment for an additional $300 over and above the $1,500 already paid, must be reversed.

Throughout the activities of the parties, plaintiff had requested a written statement of commissions he would receive, but defendant's responses always were oral and

to the effect he would do the fair and square thing by plaintiff.

Plaintiff and defendant jointly worked on a fourth sale, consummated in the presence of both in August, 1948, some two months, defendant testified, after he had notified plaintiff not to participate in any way in negotiating for this sale. The officer of the company having authority to make the purchase emphatically testified that during all negotiations and at the closing of the sale, plaintiff had accompanied defendant, had discussed details of the transaction with the latter, and had been very aggressive in negotiating the sale, it appearing to the witness that plaintiff had authority to represent the Vogt people. Plaintiff corresponded considerably on matters touching the sale, travelled rather extensively in behalf thereof, and besides being present at its closing, had had correspondence from defendant concerning the same long after the time defendant claimed he had notified plaintiff he was not to participate therein. The record supports the trial judge's disagreement with defendant's version of the matter, so that we cannot disturb his conclusions in resolving the evidence in favor of plaintiff.

Since the trial court found there was no express contract between the parties, and since both parties concurred, we must determine whether the $4,000 award was based on any substantial evidence. Plaintiff contended the award should have been far greater, and defendant asserted it should have been much less, or nothing at all. Both sides discussed at length "net profits", "fifty-fifty split", "sales discount" and the like, but the record discloses that the sales price of Vogt equipment on the fourth sale was almost exactly $80,000, 5% of which would be $4,000, the amount adjudged by the court. The only uncontroverted satisfactory evidence of value for services rendered in similar cases was elicited by defendant's own expert witness, who testified that the customary commission paid in industry to a casual dealer who assists in ef-

fecting a sale, was 5% of the sale price of the equipment, which testimony, taken together with other evidence adduced, is sufficient to justify the award.

Learned counsel for defendant cite many cases supporting the principles that: (1) Where the contract reserves the right in one party to determine the amount to be paid for services rendered, such reservation is binding on the parties, and that (2) If the contract be so indefinite as to price as to render the same unascertainable, the contract is not enforceable. We have no quarrel with these principles, although the authorities touching them are not in harmony, but we point out that we believe such principles do not apply here and therefore are not controlling.

Here, be it remembered, the Court found there was no express contract, to which finding both parties subscribed. Hence plaintiff's recovery must be had, not by way of express agreement of the parties, but by way of a contract implied in fact, based on the principle that the law will impose an obligation to pay reasonable compensation where one has accepted the unofficious services of another, not gratuitously but under circumstances that would make it unfair not to pay. It is one thing to deny recovery on a contract where the terms thereof are so indefinite as to lack a manifestation of mutual assent. Also it is one thing to restrict recovery on a contract to an amount which, by its terms, is to be determined by him who is to pay, good faith being assumed. But it would be an entirely different thing to deny recovery where, lacking an express agreement, one party renders valuable service to another in an unofficious manner, the latter accepting the fruits thereof. In such event the law, being reasonable, invokes reason in solving the problem, and requires that he who accepts service from him who unofficiously performs under circumstances justifying the latter in reasonably assuming he would be compensated must pay the reasonable value thereof. As is more clearly explained by

Prof. Williston in Sec. 41 of his monumental work on Contracts:

"It is by no means uncommon for those who offer or agree to employ others or to buy goods, to make no statement as to the wages or price to be paid. The law invokes here (as likewise where an agreement is indefinite as to time) the standard of reasonableness. Accordingly the fair value of the services or property is recoverable on the implied in fact contract."

We already have subscribed to this principle in *Standard Coal Co.* v. *Stewart,* 1928, 72 Utah 272, 269 P. 1014, cited by Prof. Williston in support thereof.

We believe the remaining error assigned by appellant relating to time when interest should commence to run, has no merit.

WADE, McDONOUGH, and CROCKETT, JJ., concur.

WOLFE, Chief Justice.

I concur for the reason that under the facts of this case services were not only unofficiously performed but were performed under an intent to pay a fair compensation, such intent having been communicated to the plaintiff and acted on by him.