2003 UT App 201

**William Anthony KRAATZ, Plaintiff, Appellant, and Cross-appellee,**

v.

**HERITAGE IMPORTS, a Utah corporation dba Heritage Honda; O. Bryan Wilkinson; and Jeffery J. Wilkinson, Defendants, Appellees, and Cross-appellants.**

No. 20010598–CA.

Court of Appeals of Utah.

June 12, 2003.

---

Kent B. Linebaugh, Jones Waldo Holbrook & McDonough, Michael N. Zundel, and James A. Boevers, Prince Yeates & Geldzahler, Salt Lake City, for Appellant.

Donald J. Winder and Gerry B. Holman, Winder & Haslam, Salt Lake City, for Appellee.

Before JACKSON, P.J., and DAVIS and THORNE, JJ.

## AMENDED OPINION

JACKSON, Presiding Judge:

### BACKGROUND

¶ 1 This appeal originates from an employment contract signed by Appellant William Kraatz and Appellee Heritage Imports (Heritage) in May 1990.[1] Heritage hired Kraatz as its manager, and the contract provided an employment term of five years. Twenty-seven months later, Heritage terminated Kraatz and their contract. Kraatz filed suit for wrongful termination in January 1993, seeking $3,507,980, plus interest, in direct (general) and consequential (special) damages. A four-day trial ensued in August 1996. Later in 1996, the trial court ruled that Heritage did not wrongfully terminate Kraatz.

¶ 2 Kraatz appealed, and in March 1999, we reversed the trial court's ruling and remanded the case for determination of dam-

---

1. This Amended Opinion replaces the Opinion in Case No. 20010598, issued on May 15, 2003. An amendment has been made to grant Kraatz costs and attorney fees incurred on appeal and prejudgment interest on the relocation expenses.

ages. *See Kraatz v. Heritage*, 1999 UT App 70 (*Kraatz I*) (memorandum decision). After the parties filed memoranda and exhibits, the trial court conducted a brief motion hearing on March 26, 2001. On April 30, 2001, the trial court entered its amended findings and conclusions awarding Kraatz certain direct damages, and excluded all consequential damages as a matter of law. Judgment was entered June 28, 2001, for $188,775.81 in damages, and $432,941.36 in attorney fees.

¶ 3 Kraatz appealed again, asserting that he was entitled to damages of $649,915.94, and $432,941.36 in attorney fees, totaling $1,082,857.30. Heritage cross-appealed, challenging the amount of attorney fees.

## ANALYSIS

### Damages for Breach of Contract

¶ 4 The primary remedy for economic losses caused by the non-performance of contracts is an action for damages for breach. *See* 24 Samuel Williston, A Treatise on the Law of Contracts § 64:1 (4th ed.2002). The fundamental principle underlying availability of contract damages is that of compensation. *See id.* The disappointed promisee is usually entitled to an award of money damages reasonably calculated to make him whole. *See id.* Damages are measured according to pecuniary loss suffered. *See id.* Thus, an award of monetary damages supplies the compensation. *See id.* The idea is to place the plaintiff-promisee in as good a position as he would have been in had the defendant-promisor not breached the contract. *See id.* In addition to recovery of direct (general) damages, the non-breaching party may also be entitled to recover so-called consequential (special) damages. *See id.*

¶ 5 In *Kraatz I*, the only issue before us was whether Heritage had breached Kraatz's employment contract by wrongfully terminating the contract and the employment. There, the trial court ruled that the termination was not wrongful. On appeal, we ruled that the termination was wrongful. Thus, we remanded the case to the trial court to assess Kraatz's damages, i.e., all economic losses. Where an employment contract is for a definite term, the employee may recover damages for benefits, such as pension contributions, insurance, and the use of an automobile, which would have been received had the employment agreement not been breached, since limiting damages solely to the salary payable for the remainder of the contract would not make the employee whole. The discharged employee may thus recover damages for lost tangible benefits, such as insurance, and rights in stock ownership or pension plans, and there is even authority permitting the recovery of damages for lost intangible benefits....

*Id.* § 66:5.

¶ 6 We first review the trial court's damage awards made pursuant to the express terms of the contract. Then we review the trial court's rulings with respect to consequential damages, attorney fees, and prejudgment interest.

### I. Direct Damages

#### A. Appreciation of Heritage's Stock Value

■ ¶ 7 Under the terms of the contract, Kraatz was entitled to fifteen percent of the value of Heritage's stock in excess of $2.5 million in the event of wrongful termination. After hearing extensive evidence on the value of Heritage's stock at the time of Kraatz's wrongful termination, the trial court found the stock to be worth $3.1 million. It awarded Kraatz $90,000, i.e., fifteen percent of $600,000 ($3.1 million less $2.5 million). Kraatz challenges the trial court's finding that the dealership was worth $3.1 million at the time of his termination.

[A]ppellate courts may not set aside a trial court's findings of fact "unless clearly erroneous." Utah R. Civ. P. 52(a). To successfully demonstrate that a factual finding is clearly erroneous, the appellant must marshal all the evidence in favor of the factual finding and show that, even when viewed in the light most favorable to the trial court's factual finding, the favorable evidence is insufficient to support the finding. Moreover, in assessing whether a finding is clearly erroneous, reviewing courts must give "due regard ... to the

opportunity of the trial court to judge the credibility of the witnesses." Utah R. Civ. P. 52(a).

*Roderick v. Ricks,* 2002 UT 84,¶ 27, 54 P.3d 1119 (footnote omitted).

¶ 8 The evidence adduced at trial, upon which the trial court based its finding of $3.1 million as the value of the dealership, consisted solely of testimony by Larry H. Miller.[2] Miller testified that shortly before Kraatz's termination, Miller purchased sixty percent of the stock in Heritage from "Bry" Wilkinson for $3 million to $3.1 million. This figure, Miller testified, included more than simply the value of the sixty percent share in the corporation, since it included, among other things, the value of "blue sky."

¶ 9 Miller further testified that he offered to pay Wilkinson $1.2 million for the remaining forty percent of the stock. However, he qualified that testimony by indicating that the offer of $1.2 million had more to do with a personal obligation to Wilkinson's children, who would receive the payment, than with the actual value of the stock. Ultimately, Miller testified that at the time of the purchase, the entire dealership was worth $3.1 million.

¶ 10 Kraatz introduced testimony by expert witnesses seeking both to discredit Miller's testimony and to establish an alternate value of the dealership. According to both Kraatz's separate valuation and his analysis of Miller's testimony, the dealership should have been valued at least at $4.2 million, and possibly as much as $4.4 million. According to Heritage, Kraatz's expert witnesses based this figure "on a subjectively determined capitalization rate of 17.5%, after making numerous adjustments to actual income. He also based his valuation on a [National Automobile Dealers Association] guide of 'above average' dealers, rather than actually evaluating the Heritage dealership."

¶ 11 The trial court ultimately made a credibility determination, finding Miller more credible than Kraatz's witnesses. This determination was based in part on Miller's superior position as one of the largest and most reputable automobile dealers in Utah, and in part on the relative soundness of Miller's valuation methodology compared with that of Kraatz's experts.

¶ 12 Kraatz asks us to overturn the trial court's finding that the dealership was worth $3.1 million by essentially rearguing the evidence that was considered at trial. He points out inconsistencies in Miller's testimony, and Heritage's counsel admits to those inconsistencies. However, while Kraatz has marshaled the evidence in support of the finding, he has failed to show "the fatal flaw" in the evidence whose "gravity [is] sufficient to convince [us] that the court's finding resting upon the evidence is clearly erroneous." *West Valley City v. Majestic Inv. Co.,* 818 P.2d 1311, 1315 (Utah Ct.App.1991).

¶ 13 For example, Kraatz cites several times Miller's testimony that Miller purchased sixty percent of the stock for $3.1 million, and then contrasts that testimony with Miller's testimony that at the same time the dealership was worth exactly the same amount. Kraatz's counsel argued at oral argument that Miller essentially testified that "two plus two equals three." While this may be convincing rhetoric, it ignores the complexity of business valuation principles generally and of this transaction specifically.

¶ 14 In dealing with that complexity, the trial court explicitly based its valuation finding on its determination that Miller was more credible as a valuation witness than were Kraatz's experts. Kraatz offers no "fatal flaw," *id.,* in that determination of credibility. Thus, he has not "convince[d] us of the [trial] court's missteps in application of the evidence to its findings. The findings, then, have not been shown to be clearly erroneous." *Id.* Accordingly, we affirm the trial court's finding regarding the dealership's valuation at the time of Kraatz's termination, and its award of $90,000 in stock appreciation bonus.

### B. Profit Bonus

¶ 15 The employment contract gave Kraatz the right to a yearly bonus of $4,000 plus ten

---

**2.** According to the trial court's findings, by the time of trial Larry H. Miller had purchased as many as thirty-five auto dealerships and had sold several.

percent of the dealership's net profits over $280,000. The contract provides that the net profits shall be "determined in accordance with accounting practices acceptable to and used by [Heritage] in reporting to American Honda, Incorporated, or such other accounting method as is mutually acceptable to both [Heritage] and [Kraatz]." The trial court awarded Kraatz no additional profit-sharing bonus because Heritage reported net losses in two of the three years in question, and reported only $5,169 profit for the other year in question. Thus, the trial court ruled that the contract does not entitle Kraatz to any profit-sharing bonus for the years prior to the wrongful termination.

¶ 16 Kraatz challenges the trial court's conclusion that the employment contract does not allow for adjustments to Heritage's reported profits for allegedly excessive expenses for purposes of calculating Kraatz's annual bonuses as measured against those profits. The interpretation of an unambiguous contract presents a question of law that we review for correctness. *See Holladay Duplex Mgmt. Co. v. Howells,* 2002 UT App 125, ¶ 2, 47 P.3d 104.

¶ 17 The trial court awarded Kraatz $12,000 for the base $4,000 bonus for the three years after his wrongful termination. It also ruled that Kraatz was entitled to a profit bonus of $34,975 for those same years, less mitigation from subsequent employment in the amount of $81,058, equaling negative $46,082. The trial court thus credited Heritage with $46,082 toward the total damage award.

¶ 18 Kraatz introduced expert accountant testimony that Kraatz hoped would prove Heritage significantly understated its profits. Specifically, Kraatz offered evidence of allegedly excessive expenses, such as unreasonable rents paid to Larry H. Miller. The trial court ruled that such accounting adjustments were improper because the contract specifically allows Heritage discretion in selecting a method of reporting profits.

¶ 19 Kraatz seeks to overturn the trial court's ruling in this regard on the basis that giving Heritage unfettered discretion in the calculation of its profits opens the door to abuse in the form of Heritage zeroing out its

profits through granting its shareholders bonuses equal to what would otherwise count toward profits, thus depriving Kraatz of the benefit of the bargain. He argues that this is in fact what happened, since certain expenditures, such as rents paid to Larry H. Miller, were disproportionate to the value received for those payments. Thus, Kraatz argues, those expenditures cannot "fairly and reasonably be charged to Kraatz for the purpose of calculating his share of Heritage's profits after his employment was wrongfully terminated." Ultimately, Kraatz's argument amounts to an argument of breach of the implied covenant of good faith and fair dealing.

¶ 20 The trial court expressly found no evidence of breach of the implied covenant of good faith and fair dealing, and Kraatz has not challenged that finding. Instead, Kraatz urges us to reverse the trial court's ruling disallowing the accounting adjustments on the basis of general fairness, without citing any legal principles that would allow deviation from the express terms of the contract. However, we do not see a distinction between Kraatz's general fairness argument on appeal and his implied covenant argument before the lower court.

¶ 21 As we stated in *Kraatz I,* "[w]hen 'the language of the contract is unambiguous, "then the parties' intentions must be determined solely from the language of the contract." '" *Kraatz I,* 1999 UT App 70 (citations omitted). Further, our supreme court has "declar[ed] that an implied covenant [of good faith and fair dealing] cannot be used to alter the rights agreed to by the parties." *Hodgson v. Bunzl Utah, Inc.,* 844 P.2d 331, 335 (Utah 1992).

¶ 22 In this case, Kraatz and Heritage unambiguously agreed to Heritage's right to determine its profits, as it saw fit, for purposes of calculating Kraatz's annual profit-sharing bonus. In spite of Kraatz's protestations about the unfairness of this arrangement, he nevertheless agreed to it and intended Heritage to have this unilateral right, as evidenced by the unambiguous language of the contract he signed. Thus, we cannot "alter the rights agreed to by the parties" by

appeal to a more general sense of fairness.[3] *Hodgson,* 844 P.2d at 335. Accordingly, the trial court did not err in disallowing the accounting adjustments Kraatz sought.[4]

## C. Deposition Costs and Expert Witness Fees

 ¶ 23 The employment contract provides:

> [I]n the event either party defaults in the performance of any term or condition hereunder, the defaulting party shall pay all expenses and costs incurred by the other party in enforcing the terms hereof, including but not limited to, costs, reasonable attorney's fees, expert witness fees, and/or deposition costs whether incurred through legal action or otherwise and whether incurred before or after judgment.

The trial court disallowed expert witness fees for two witnesses in the amount of $12,684 on grounds that the witnesses in question "did not testify at trial, their testimony was not reasonably necessary to the prosecution of the case, and the witnesses only provided information counsel could have developed from known information." The trial court also disallowed $9,370 in deposition costs and witness fees on grounds that those witnesses, identified by Heritage as potentially having pertinent knowledge of the case and deposed by Kraatz, ultimately did not testify at trial.

Kraatz deposed seventeen witnesses, and five testified at trial. The trial court disallowed costs and fees related to all seventeen witnesses despite the affidavit of Kraatz's counsel supporting the necessity of consulting or deposing the non-testifying experts and deponents.

¶ 24 Kraatz challenges the trial court's interpretation of the employment contract with respect to the expert witness fees and deposition costs discussed above that Kraatz incurred during the course of litigation. "The trial court's interpretation of the meaning of 'costs' [and 'fees'] in the contract 'is "a question of law. Thus, we accord the trial court's legal conclusions regarding the contract no deference and review them for correctness."'" *Chase v. Scott,* 2001 UT App 404,¶ 10, 38 P.3d 1001 (quoting *Pollard v. Truck Ins. Exch.,* 2001 UT App 120, ¶ 6, 26 P.3d 868 (quoting *Nova Cas. Co. v. Able Constr., Inc.,* 1999 UT 69,¶ 6, 983 P.2d 575)).

¶ 25 Kraatz argues that although the trial court did not explicitly cite rule 54(d) of the Utah Rules of Civil Procedure, it nevertheless used rule 54(d) standards in its analysis of whether to award these costs and fees. As support for his argument, Kraatz notes that all the cases the trial court cited interpret rule 54(d) or apply other standards that would exclude costs and fees absent contractual provision. *See Board of Comm'rs of the*

3. Although it does not affect our analysis, we note that Heritage's right to calculate profits is not unfettered. Heritage must maintain approval of its profit calculations from American Honda, Inc. Since Kraatz's profit-sharing bonus is tied to the profits reported to American Honda, Inc., Kraatz has some measure of protection from any desire Heritage may have to deprive him of the benefit of the bargain. The trial court found that American Honda, Inc., did not object to Heritage's profit calculations or accounting methods. Thus, that protection appears to have been firmly in place absent collusion between Heritage and American Honda, Inc., to deprive Kraatz of his yearly bonus.

4. Kraatz earned $81,057.68 in profit bonuses at his new job. His profit bonus at Heritage would have been $34,975.40. Thus, he had excess bonus mitigation of $46,082.28. In its computations, the trial court awarded this amount to Heritage as an offset to damages owed. However, the trial court did not state any legal basis for making this allowance.

Kraatz asserted in his brief that the trial court's calculation was wrong, but he also failed to provide us with any legal analysis demonstrating that the allowance was reversible error. Accordingly, the issue is inadequately briefed for our review. *See* Utah R.App. P. 24(j) ("Briefs which are not in compliance may be disregarded or stricken."). Further, Kraatz did not preserve this issue for appeal. Heritage proposed this offset in its trial court memorandum. Kraatz filed a general response, but did not mention this specific issue. Moreover, when the trial court awarded the offset, Kraatz failed to object. Thus the trial court did not have the opportunity to reconsider whether its action was in error. Accordingly, we are unable to reach the trial court's decision to allow the offset. *See Diversified Holdings, L.C. v. Turner,* 2002 UT 129,¶ 8, 63 P.3d 686 ("' "[I]ssues not raised at trial cannot be argued for the first time on appeal."' ... The issue was therefore not preserved for appeal.") (Quoting *Monson v. Carver,* 928 P.2d 1017, 1022 (Utah 1996) (quoting *State v. Lopez,* 886 P.2d 1105, 1113 (Utah 1994)).).

*Utah State Bar v. Petersen,* 937 P.2d 1263, 1272 (Utah 1997); *Sinclair v. Insurance Co. of N. Am.,* 609 F.Supp. 397, 409 (E.D.Pa. 1984) (applying federal standards to cost award analysis); *Ellis v. University of Kan. Med. Ctr.,* 2000 WL 1310508, 2000 U.S. Dist. LEXIS 22037 (D.Kan. Aug. 31, 2000) (same).

¶ 26 Kraatz then cites *Chase,* 2001 UT App 404,¶¶ 18–20, 38 P.3d 1001, as support for his argument. *Chase* involved the enforcement of a real estate purchase contract, and the contract itself contained a clause awarding costs and fees to the prevailing party in any litigation to enforce the terms of the contract. *See id.* at ¶¶ 2–6. The trial court awarded costs and fees to Scott, the prevailing party, even though rule 54(d) would have excluded some of those costs and fees. *See id.* at ¶ 6. Chase appealed, arguing that "even if the contractual provision is deemed applicable to this case, .... the trial court improperly interpreted the contractual 'costs' as being outside the scope of Utah Rule of Civil Procedure 54(d)." *Id.* at ¶ 9. On review, we held as follows:

> "Contracts 'should be read as a whole, in an attempt to harmonize and give effect to all of the contract provisions.'" According to Rule 54(d), "costs shall be allowed as of course to the prevailing party unless the court otherwise directs[.]" Utah R. Civ. P. 54(d). In order to not render the term "costs" superfluous, the Contract should be read to include those costs that were associated with the litigation but would not be included under a regular Rule 54(d) cost award. "There may be expenses associated with litigation that are necessary, but which nonetheless are not properly taxable as [statutory or rule-based] costs." Again, in order to give effect to the term "costs" in the Contract, we hold that "costs" should not be limited by case law interpreting Rule 54(d).

*Id.* at ¶ 20 (citations omitted) (alterations in original). Thus, Kraatz argues, the trial court erred in applying rule 54(d) standards to disallow recovery of the costs and fees that the unambiguous language of the contract would otherwise allow.

¶ 27 Heritage responds that the language of the contract as well as general contract principles require all costs and fees recovered to be reasonable. We agree with Heritage on this point. *See Coulter & Smith, Ltd. v. Russell,* 966 P.2d 852, 858 (Utah 1998) (stating "if a contract fails to specify a time of performance the law implies that it shall be done within a reasonable time"); *Wooldridge v. Wareing,* 120 Utah 514, 236 P.2d 341, 342 (1951) (reading implied term of reasonable compensation into service contract). *See also Olympus Hills Shopping Ctr. v. Smith's Food & Drug Ctrs.,* 889 P.2d 445, 458 (Utah App.1994) (stating "courts should avoid unreasonable interpretation when contract provision would be reduced to absurdity").

■ ¶ 28 The parties dispute whether the language of the contract explicitly requires that recoverable costs and fees be reasonable. However, to interpret the contract so as to allow unreasonable costs and fees would reduce the costs and fees recovery provision "to absurdity." *Id.* Thus, we hold that this contract does require reasonableness.

¶ 29 However, the reasonableness requirement does not end our inquiry. The trial court disallowed recovery for the costs and fees in question not based on any standard of reasonableness, but solely because they correlated to testimony not directly used at trial. We are persuaded by Kraatz's argument that the trial court applied rule 54(d) standards in assessing whether he may recover these costs and fees. We cannot determine whether a reasonableness analysis would have produced the same result the trial court reached under rule 54(d) analysis.

¶ 30 Instead, the court should have looked to the language of the contract, which allows recovery for all costs and fees connected with enforcement of the contract, "whether incurred through legal action or otherwise," with an implied term of reasonableness.

¶ 31 The trial court's denial of recovery for these costs and fees based on the lack of use at trial would render other provisions of the contract meaningless. Specifically, the language "whether incurred through legal action or otherwise" would have no meaning if costs and fees may be recoverable only if the testimony is used at trial, because all costs and fees incurred in any setting "otherwise"

than "legal action" would not have any possibility of being used at trial. In the extreme, if Kraatz and Heritage had settled before trial, virtually no costs or fees would be recoverable since no trial ensued. The unambiguous language of the contract, however, contemplates recovery for a broader range of costs and fees than simply those necessary to elicit trial testimony.

¶ 32 Thus, the trial court erred by interpreting the contract to allow only costs and fees that produce trial testimony because the express language of the contract allows other costs and fees. Further, even if we assumed that the trial court correctly interpreted the express language of the contract, such a construction would render other parts of the contract meaningless. *See ELM, Inc. v. M.T. Enters.*, 968 P.2d 861, 863 (Utah Ct. App.1998) (stating "the contract should be read as a whole, in an attempt to harmonize and give effect to all of the contract provisions"). Accordingly, we reverse the trial court's ruling with respect to the disputed costs and fees and remand for a new determination of the reasonableness of those fees incurred in enforcing the terms of the contract.[5]

D. Club Memberships

■ ¶ 33 Kraatz also claims that the trial court erred in denying his claim for damages resulting from the loss of membership to both a particular sports club and a particular country club. In proffering this argument, Kraatz maintains that his damages amount to over $6000 from the loss of the use of Heritage's membership in these facilities. It is undisputed that the contract expressly provided Kraatz with the use of a membership in both facilities

during the term of [the] agreement. Said membership shall be owned by [Heritage],

and [Heritage] shall pay the membership fees, monthly dues and monthly charges relating to business use of the membership by [Kraatz]. [Kraatz] shall be responsible for all charges relating to non-business use of the membership.

" 'If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law.' " *Wagner v. Clifton*, 2002 UT 109,¶ 12, 62 P.3d 440 (quoting *WebBank v. American Gen. Annuity Serv. Corp.*, 2002 UT 88,¶ 19, 54 P.3d 1139).

¶ 34 Here, neither party argues that the contract is ambiguous, nor is there any language that would lend itself to this conclusion. Thus, the limits of Kraatz's contractual damages concerning these memberships are found within the operative contract provisions.

¶ 35 In the contract, Heritage promised Kraatz nothing more than access to the two facilities, with an additional promise to pay all fees related to Kraatz's business use of the facilities. After Kraatz's termination, it was no longer possible for him to conduct business for Heritage; therefore his loss, definable under the contract, is restricted to his personal use of the facilities. Pursuant to the contract, when using the membership for personal reasons, Kraatz was responsible for all associated "membership fees, monthly dues and monthly charges."

■ ¶ 36 Thus, under the contract's plain language, Heritage promised only to guarantee Kraatz access to the Hidden Hills Country Club and the Sports Mall, leaving to Kraatz the responsibility to pay for all personal use. Accordingly, we affirm the trial court's decision, denying Kraatz recovery for his non-business use of the memberships.[6]

5. In its response to Kraatz's argument, Heritage attempts to characterize many of Kraatz's costs and fees as inherently unreasonable. However, we cannot make a determination of reasonableness on appeal without the trial court first making that determination below. The trial court made no such determination, instead incorrectly relying on rule 54(d) standards to determine whether Kraatz may recover the costs and fees as a matter of law. Thus, we remand for a reasonableness determination.

Further, neither party has appealed the trial court's ruling with respect to the particular costs about which Heritage complains, such as photocopy expenses. Thus, we cannot say as a matter of law that Kraatz was not entitled to those costs and fees.

6. Our conclusion that the contract is an integrated, unambiguous document forecloses Kraatz's assertions concerning additional inducement or alternative promises on the part of Heritage and

However, we also conclude that the trial court should have provided Kraatz an opportunity to show that he was personally damaged by the loss of access to the facilities and failure to do so was error.

¶ 37 On remand, the trial court is instructed to take evidence concerning the value of the access to Kraatz and enter factual findings on this issue. Furthermore, it is important to note that lost value does not necessarily equal, as urged by Kraatz, the costs of the memberships because Kraatz was never scheduled to receive, nor did he expend, the money value of the membership costs. Thus, on remand, Kraatz bears the burden of proving his damages, which would at most equate to the value lost to him as a result of losing access to the two facilities in question. The trial court's duty is to determine the harm to Kraatz—not simply the money value of the membership—as demonstrated by Kraatz's historic use and his demonstrable loss.[7]

### E. Relocation Expenses

¶ 38 As inducement for Kraatz to relocate from St. George, Utah, to Salt Lake City, Utah, the employment contract provided that Heritage would reimburse Kraatz for various moving expenses and costs associated with purchasing a new residence. Specifically, the agreement provided that Heritage would pay

> duplicate housing expenses incurred by [Kraatz] prior to the sale of [Kraatz's] residence in St. George, Utah.... [Heritage] shall reimburse [Kraatz] for the lesser of (a) [Kraatz's] house payment on the residence in St. George or (b) [Kraatz's] house payment on the new residence in the Salt Lake area.... [Heritage's] obligation to reimburse [Kraatz] for those duplicate housing expenses shall terminate at the earlier to occur of (a) the expiration of [six months] or (b) the sale of [Kraatz's] residence in St. George.

Kraatz did not sell his St. George home within the six month period. However, Kraatz and Heritage agreed that Kraatz would forego his entitlement to the full reimbursement, and accept instead the cost of the mortgage payments on his Salt Lake home less rents received from the lease of the St. George home. In exchange, Heritage agreed to pay the difference until Kraatz sold the St. George home, even beyond the original six-month period provided for in the employment agreement.

¶ 39 As part of his direct damages, Kraatz claimed damages of $2,210.53 as the amount owing under the above agreement. The trial court denied these damages, analyzing the claim as a consequential damages claim because the amounts accrued after the six-month period provided for in the written employment agreement. Further, the trial court highlighted the fact that Heritage never agreed to pay the differential amounts "indefinitely" and that Kraatz "failed to demonstrate any evidence of further consideration given by him" for the "St. George home subsidy."

¶ 40 We hold the trial court erred in denying recovery on the St. George home subsidy. Giving up value to which one is legally entitled constitutes sufficient consideration to support a contract. *See Surety Underwriters v. E & C Trucking, Inc.*, 2000 UT 71, ¶ 22 n. 6, 10 P.3d 338 ("Consideration is commonly defined as '[s]omething of value (such as an act, *a forbearance*, or a return promise) received by a promisor from a promisee.' ") (Quoting Black's Law Dictionary 300–01 (7th ed.1999).) (Emphasis added.).

¶ 41 In this case, Kraatz agreed to a forbearance constituting consideration for a contract. Although the original written employment agreement provided for only six months of home reimbursements, the parties subsequently made an oral modification to that agreement. In spite of the trial court's conclusion that Kraatz offered no additional

---

their effect on the contract, as well as his argument concerning whether his continued service constitutes additional consideration through performance.

7. Contract damages in Utah " 'seek[ ] to place the aggrieved party in the same economic position he would have had if the contract had been performed.' " *Mahmood v. Ross*, 1999 UT 104, ¶ 38, 990 P.2d 933 (citation omitted).

consideration in exchange for payments over an extended time, Kraatz in fact agreed to accept less than that to which he was entitled. Specifically, he agreed not to require reimbursement for the entire mortgage on the St. George home, and agreed to accept only the difference between his current mortgage and rents received on the St. George home. Thus, Kraatz gave additional consideration, in the form of a forbearance, sufficient to support a contract extending Heritage's duty to pay the subsidy.

¶ 42 The parties did not agree that Heritage would pay the subsidy "forever," but they did agree that Heritage would continue to pay until the St. George home was sold. Although none of the parties could anticipate when the St. George home would be sold, Utah law implies terms of reasonableness into contracts such as this. *See Coulter & Smith, Ltd. v. Russell,* 966 P.2d 852, 858 (Utah 1998); *Wooldridge v. Wareing,* 120 Utah 514, 236 P.2d 341, 342 (1951). Thus, the parties entered into a valid contract that obligated Heritage to pay the St. George home subsidy for a reasonable time until the home was sold.[8]

¶ 43 Accordingly, we hold the trial court erred in denying recovery of $2,210.53 for the amounts owing under the parties' contract. The trial court's ruling in this respect is reversed, and Kraatz is hereby awarded $2,210.53 for this claim.

### F. Unreimbursed Health Care Expenses

¶ 44 The employment agreement entitled Kraatz to reimbursement for up to $5,000 per year in health-care costs not covered by health insurance. Kraatz claimed damages in the amount of $16,681.90, but the trial court awarded only $13,197.64. Kraatz claims an additional $3,484.26 in unreimbursed health-care costs.

¶ 45 Kraatz argues that the trial court's ruling is based solely on its erroneous statement that Kraatz "is ignoring his oral agreement with B. Wilkinson to forego non-covered health reimbursements because [Heritage] was unprofitable." Kraatz cites the record to show that he did not agree to "forego" the reimbursements, but rather agreed to "postpone" them. While this appears to be a correct statement of the facts, the trial court's erroneous recitation is not the basis for denying recovery.

¶ 46 Rather, the trial court based its denial of recovery on the fact that $8,484.26 of Kraatz's claim relate to costs incurred in "the first four months following termination." Because Kraatz is only entitled to $5,000 per year in health-care reimbursements, the trial court permitted recovery for $5,000 for that year and denied recovery for the remaining $3,484.26 incurred in the same year.[9]

¶ 47 Thus, the trial court correctly applied the express terms of the contract. Kraatz has offered no legal basis for recovery of the $3,484.26, either pursuant to the express terms of the contract or as consequential damages. Accordingly, we affirm the trial court's award of unreimbursed health-care costs.

### II. Consequential Damages [10]

¶ 48 Kraatz also argues that the trial court erred in denying his claim for consequential damages concerning potential Christmas bonuses, Jazz tickets, retirement contributions, warranty income, and non-business use of the club memberships. Un-

---

**8.** Heritage's additional arguments that the St. George home subsidies were speculative and unforeseeable at the time the contract was formed are issues applicable only to consequential damages. Thus, these issues are inapplicable here because the St. George home subsidies are awarded under the express terms of a modified contract.

**9.** The trial court explained the arithmetic somewhat differently. It stated Kraatz "claimed he is owed a total of $16,681.90 for unreimbursed health care costs.... [Kraatz] is entitled to an award of $13,197.64 ($16,681.90–$3,484.26)."

Although the trial court's articulation of the arithmetic de-emphasizes the reason for subtracting $3,484.26 from the total recovery, this fact alone is not a sufficient basis for reversal, particularly where the trial court reached the correct sum.

**10.** While Kraatz raised several tort claims in his initial complaint, the trial court dismissed these claims, an action that he failed to appeal, thus foreclosing the broad range of tort remedies that may have been available to him.

der Utah law, damages available for a breach of contract may include not only general contract damages, but because the goal is to " 'place the aggrieved party in the same economic position he would have had if the contract had been performed,' " *Mahmood v. Ross*, 1999 UT 104,¶ 38, 990 P.2d 933 (quoting John D. Calamari & Joseph M. Perillo, The Law of Contracts § 14-4, at 591 (3d ed.1987)), the party may also seek redress through consequential damages.[11]

¶ 49 *Mahmood* and *Castillo v. Atlanta Cas. Co.* set forth a three-part analytical test for consequential damages. *See Mahmood,* 1999 UT 104 at ¶ 20, 990 P.2d 933; *Castillo v. Atlanta Cas. Co.,* 939 P.2d 1204, 1209 (Utah Ct.App.1997). "To recover consequential damages, a non-breaching party must prove (1) that consequential damages were *caused* by the contract breach; (2) that consequential damages ought to be allowed because they were *foreseeable* at the time the parties contracted; and (3) the amount of consequential damages within a *reasonable certainty.*" *Mahmood,* 1999 UT 104 at ¶ 20, 990 P.2d 933 (emphasis added). *See also Castillo,* 939 P.2d at 1209. These three factors are founded in basic legal principles, which we briefly address in connection with our remand of this issue.

¶ 50 In *Mahmood,* the court addressed *causation* in the context of a motion for a directed verdict regarding consequential damages resulting from breach of a settlement agreement, stating,

"Proximate cause is 'that cause which, in the natural and continuous sequence[ ] (unbroken by an efficient intervening cause), produces the injury and without which the result would not have occurred. It is the efficient cause—the one that necessarily

sets in operation the factors that accomplish the injury.' " Proximate cause is generally determined by an examination of the facts, and questions of fact are to be decided by the [fact-finder].... However, this does not mean that a [fact-finder] is free to find a causal connection between a breach and some subsequent injury by relying on unsupported speculation. Although [fact-finders] may make deductions based on reasonable probabilities, "the evidence must do more than merely raise a conjecture or show a probability. Where there are probabilities the other way equally or more potent the deductions are mere guesses and the [factfinder] should not be permitted to speculate. The rule is well established in this jurisdiction that where 'the proximate cause of the injury is left to conjecture, the plaintiff must fail as a matter of law.' "

*Mahmood,* 1999 UT 104 at ¶ 22, 990 P.2d 933 (citations omitted). Under this definition, Mahmood failed to prove the causation factor.

¶ 51 Next, because of Mahmood's failure of proof, the court did not address the foreseeability factor but defined it, stating, "[t]o prove consequential damages, a claimant must not only show a causal link between the breach and the subsequent injury, but he must also show that the injury was reasonably foreseeable or reasonably contemplated by the parties at the time the contract was entered into." *Id.* at ¶ 30 (citing *Ranch Homes, Inc. v. Greater Park City Corp.,* 592 P.2d 620, 624 (Utah 1979)).

¶ 52 Central to the availability of consequential damages is the fact that " '[t]he foreseeability of any such damages will always

---

11. Consequential damages have been considered in the following Utah decisions: *Castillo v. Atlanta Cas. Co.,* 939 P.2d 1204, 1211 n. 6 (Utah Ct.App.1997) (stating consequential "damages must be based on credible evidence that such loss or damage in fact occurred and that the amount of such damage is reasonably ascertainable"); *Beck v. Farmers Ins. Exch.,* 701 P.2d 795, 801 (Utah 1985) ("Although the policy limits define the amount for which the insurer may be held responsible in performing the contract, they do not define the amount for which it may be liable upon a breach."); *Billings v. Union Bankers Ins. Co.,* 918 P.2d 461, 466 (Utah 1996) (stating "consequential damages for breach of contract may reach beyond the bare contract terms") (quoting *Beck,* 701 P.2d at 801–02 (citing *Bevan v. J.H. Constr. Co.,* 669 P.2d 442, 444 (Utah 1983))); *Pacific Coast Title Ins. Co. v. Hartford Accident & Indem. Co.,* 7 Utah 2d 377, 325 P.2d 906, 908 (1958); *Macris & Assoc., Inc. v. Neways, Inc.,* 2002 UT App 406,¶ 13, 60 P.3d 1176 (allowing recovery of attorney fees as consequential damages when incurred in litigation with third party, even when general rule regarding attorney fees would preclude recovery); *Heslop v. Bank of Utah,* 839 P.2d 828, 840 (Utah 1992).

hinge upon the nature and language of the contract and the reasonable expectations of the parties.'" *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1050 (Utah 1989) (citation omitted).[12]

¶ 53 Finally, *Mahmood* did not define or apply the *reasonable certainty* factor of its three-part test. Even so, it is clear that a plaintiff must offer proof within a reasonable certainty of the amount of his or her loss. *See Castillo*, 939 P.2d at 1211 (denying award of consequential damages because amount of injury for loss of a vehicle's use was not proven with reasonable certainty since plaintiffs did not present evidence sufficiently showing extent to which a replacement vehicle would have been used). *See also Graham v. Street*, 2 Utah 2d 144, 270 P.2d 456, 459 (Utah 1954) (barring recovery for distress, anxiety, and the possibility of increased profits had plaintiff's skills and contacts been utilized on grounds that such damages were "highly speculative," stating that "some degree of specificity must be had in order to guide the parties and the court in their preparation and deliberations").

 ¶ 54 However, the pecuniary amount of consequential damages need only be proven with reasonable certainty and not absolute precision. *See Alta Health Strategies, Inc. v. CCI Mech. Serv.*, 930 P.2d 280, 286 (Utah Ct.App.1996).

> Once a defendant has been shown to have caused a loss, he should not be allowed to escape liability because the amount of the loss cannot be proved with precision. Consequently, the reasonable level of certainty required to establish the *amount* of a loss is generally lower than that required to establish the *fact* or *cause* of a loss. The certainty requirement is met as to the amount of lost profits if there is sufficient evidence to enable the trier of fact to make

a reasonable approximation. What constitutes such an approximation will vary with the circumstances. Greater accuracy is required in cases where highly probative evidence is easy to obtain than in cases where such evidence is unavailable.

*Cook Assocs. v. Warnick*, 664 P.2d 1161, 1166 (Utah 1983).

 ¶ 55 Here, the trial court failed to analyze Kraatz's consequential damage claim under *Mahmood's* three-part test and instead limited Kraatz's claim as a matter of law to his contract claims.[13] Failure to apply this legal standard constitutes reversible error of law. Accordingly, we reverse the trial court's denial of Kraatz's consequential damages claims and remand for a hearing on this issue and the proper application of the legal standard.

### III. Heritage's Cross–Appeal: Attorney Fees

¶ 56 Heritage challenges the trial court's award of attorney fees. Heritage argues the award was excessive because it drastically exceeded the amount Kraatz recovered as principal damages and because the items charged to Heritage were unreasonable.

> [W]hile the award of attorney fees must be supported by evidence in the record, the trial court has discretion in determining the question of a fee's "reasonableness," as this issue must be decided against a variety of factual backgrounds. A trial court's discretion in determining the amount of a reasonable attorney fee "arises from the fact that it is in a better position than an appellate court to gauge the quality and efficiency of the representation and the complexity of the litigation." Thus, as noted above, in the absence of an abuse of discretion, this court will not disturb the trial court's findings.

---

12. *See also Heslop v. Bank of Utah*, 839 P.2d 828, 840 (Utah 1992); *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 466 (Utah 1996); *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 801 (Utah 1985); 25 C.J.S. Damages § 30 (2002).

13. The trial court's decision to limit Kraatz's damages to his contract claims was predicated on its interpretation of language from our earlier memorandum decision in this case. *See Heritage v. Kraatz*, 1999 UT App 70. However, we con-

clude that the trial court improperly limited the scope of Kraatz's claim on remand. Our earlier decision did nothing more than inform the trial court that an integrated contract existed and that Kraatz therefore had a legitimate cause of action for breach of contract. Nowhere in our earlier decision did we intend to foreclose as a matter of law the possibility of Kraatz recovering consequential damages as a result of the breach.

*Valcarce v. Fitzgerald,* 961 P.2d 305, 317 (Utah 1998) (citations omitted). Heritage presents five main arguments in support of its challenge to the attorney fee award.

¶ 57 First, Heritage argues that Kraatz was barred from recovering damages arising outside the express terms of the contract pursuant to our holding in *Kraatz I.* However, even if we accepted this interpretation of the holding of *Kraatz I,* the express terms of the contract provide for recovery of attorney fees, and the trial court thus would not have abused its discretion.

¶ 58 Second, Heritage argues Kraatz is not entitled to attorney fees arising from the pursuit of unsuccessful claims, and the trial court's damage award did not sufficiently distinguish between the fees arising from successful claims and those arising from unsuccessful claims. Heritage correctly asserts that a party seeking recovery of attorney fees must

> categorize the time and fees expended for "(1) successful claims for which there may be an entitlement to attorney fees, (2) unsuccessful claims for which there would have been an entitlement to attorney fees had the claims been successful, and (3) claims for which there is no entitlement to attorney fees." Claims must also be categorized according to the various opposing parties.

*Foote v. Clark,* 962 P.2d 52, 55 (Utah 1998) (citation omitted). However, Heritage does nothing more than assert that Kraatz "did not withdraw any time for his six unsuccessful claims from his discovery and damage analysis or his first appeal." To the contrary, Kraatz in fact withdrew his claim for $15,691.50 in attorney fees accrued in pursuit of unsuccessful claims against individuals. Further, a review of Kraatz's counsel's fee affidavit and very detailed accompanying materials convince us that Kraatz thoroughly accounted for all time spent pursuing his respective claims, and that the trial court did not abuse its discretion in awarding attorney fees in accordance with that accounting.

¶ 59 Third, Heritage argues Kraatz is not entitled to attorney fees in excess of the principal damage award. Heritage cites several cases in other jurisdictions for this proposition, but has cited no Utah case law. We decline to follow the minority rule that the principal damage award limits the amount recoverable in fees. Thus, this argument also fails to convince us that the trial court abused its discretion in its attorney fee award.

¶ 60 Fourth, Heritage argues Kraatz's attorney fees are excessive and unreasonable due to alleged inefficiency of counsel and unreasonable time spent. This argument is based on four alleged inefficiencies: (1) Kraatz's counsel spent time researching the trial judge's reversal rate on appeal in deciding whether to appeal in this case; (2) "Time spent on travel is not fully compensable"; (3) Kraatz's counsel billed for two or more attorneys' time spent on the same task; and (4) Kraatz's counsel billed for time spent in attorney conferences. Heritage has not cited any Utah authority suggesting that any one of these things should not be recoverable within the trial court's discretion. Further, although Heritage has attempted to marshal the evidence in favor of the trial court's finding that the fees are reasonable, it has failed to show that the particular items billed were so unreasonable that the trial court must, in its discretion, forbid recovery of them. In Kraatz's reply brief, he states:

> Heritage's opening brief ... devotes less than two pages to a purported marshaling of the evidence. However, the only evidence Heritage references is the reductions Kraatz made in response to Heritage's objections....

> Heritage ignores all of the other evidence supporting the fee award ... including the duration, difficulty and complexity of the litigation (including the first appeal, and the post-remand damage issues), the overlapping nature of the compensable and noncompensable claims, ... the evolving nature of the amount in controversy, the necessary financial analysis of Heritage, the reasons for the number of depositions taken, the experience and expertise of Kraatz's counsel, the necessity of involving multiple attorneys in Kraatz's representa-

tion, and the overall reasonableness of the fee award.

We agree. Heritage's marshaling of the evidence in support of the attorney fee award fails to deal with this evidence, and we thus cannot say the trial court abused its discretion.

 ¶ 61 Fifth, Heritage argues the trial court erred in awarding such a high attorney fee award in light of Kraatz's rejection of Heritage's settlement offers, both of which exceeded the principal damage award by more than two hundred percent. Again, Heritage has cited only one case from New York for the proposition that the rejection of reasonable settlement offers limits recovery of attorney fees. We decline to follow this rule, and Heritage's argument fails. Accordingly, we affirm the trial court's attorney fee award.

## IV. Prejudgment Interest[14]

¶ 62 The trial court awarded Kraatz prejudgment interest on his base salary, fixed yearly bonus, demonstrator automobile, and health insurance because "these damage items were capable of calculation with reasonable precision at the time of his termination." · However, the trial court ruled that the profit bonus, subsequent compensation enhancements, stock appreciation, attorney and expert witness fees, and deposition costs "were not complete or capable of calculation with reasonable precision." Thus, it denied recovery of prejudgment interest on those items.

¶ 63 Kraatz challenges the trial court's refusal to award pre-judgment interest on his unliquidated attorney fees, costs, and various other damages. " 'A trial court's decision to grant or deny prejudgment interest presents a question of law [that] we review for correctness.' " *Lyon v. Burton*, 2000 UT 19,- ¶ 73, 5 P.3d 616 (quoting *Cornia v. Wilcox*, 898 P.2d 1379, 1387 (Utah 1995)).

¶ 64 We begin our discussion of this issue by reciting the current law in Utah with respect to prejudgment interest:

> [W]here the damage is complete and the amount of the loss is fixed as of a particular time, and that loss can be measured by facts and figures, interest should be allowed from that time and not from the date of the judgment. On the other hand, where damages are incomplete or cannot be calculated with mathematical accuracy, such as in case of personal injury, wrongful death, defamation of character, false imprisonment, etc., the amount of the damage must be ascertained and assessed by the trier of the fact at the trial, and in such cases prejudgment interest is not allowed.

*Bjork v. April Indus., Inc.*, 560 P.2d 315, 317 (Utah 1977). *See also James Constructors, Inc. v. Salt Lake City Corp.*, 888 P.2d 665, 671 (Utah Ct.App.1994) (reiterating standard for awarding prejudgment interest); *Canyon Country Store v. Bracey*, 781 P.2d 414, 422 (Utah 1989) (allowing prejudgment interest to compensate full loss); *Fell v. Union Pac. Ry. Co.*, 32 Utah 101, 88 P. 1003, 1005 (1907) (same); *Shoreline Dev., Inc. v. Utah County*, 835 P.2d 207, 211 (Utah Ct.App.1992) (allowing prejudgment interest only where damages are fixed and can be calculated with mathematical accuracy).

¶ 65 We held in *James Constructors, Inc.* that a prevailing party may not receive prejudgment interest on attorney fees where the reasonableness of those fees is in dispute. *See James Constructors, Inc.*, 888 P.2d at 671–73. Such fees would be inappropriate for prejudgment interest because they are not fixed or calculable with mathematical certainty until the court makes an independent determination of their reasonableness. *See id.* On the other hand, in *Parents Against Drunk Drivers v. Graystone Pines Homeowners' Ass'n*, 789 P.2d 52, 59 (Utah Ct.App. 1990), "we suggested[ ] prejudgment interest on a fixed amount set forth in a valid attor-

---

14. As an alternative measure of damages for the loss of the time value of money Heritage owes Kraatz, Kraatz argues that we should adjust the value of the overall damage award by the change in the Consumer Price Index over time. This argument has no merit, however, because Kraatz offers us no legal basis to so adjust his damages. The only authority Kraatz cites comes from another jurisdiction and involves the application of federal law. Accordingly, we decline to address this issue.

ney fees agreement is not improper." *James*, 888 P.2d at 672.

### A. Prejudgment interest on stock appreciation

¶ 66 The trial court offered virtually no analysis to support its denial of prejudgment interest on Kraatz's stock appreciation rights. However, applying the general rule of prejudgment interest to this item, it is clear that Kraatz is entitled to prejudgment interest. Although the parties hotly disputed the value of the dealership, Heritage firmly asserted, and the trial court agreed, that the dealership was unquestionably worth $3.1 million at the time of Kraatz's discharge. Larry H. Miller provided this figure based on his assessment of the book value of the dealership's assets and future earnings potential. Although the parties dispute the appropriate valuation method, we have already determined that the court did not err in valuing the dealership at $3.1 million.

¶ 67 Thus Kraatz's damages, namely fifteen percent of stock appreciation over $2.5 million, were "fixed as of a particular time [the time of termination], and that loss can be measured by facts and figures [Larry H. Miller's calculations]." *Bjork*, 560 P.2d at 317. This loss is not of the type considered to be unfixed and unmeasurable, such as the loss involved in pain and suffering or wrongful death. *See id.* Rather, the loss was fixed, and it is only the valuation method that is in dispute. *See Jack B. Parson Constr. Co. v. State of Utah*, 552 P.2d 107, 109 (Utah 1976) (allowing prejudgment interest where "[t]he amount due under the contract was ascertainable by calculation and it was only the method to be used in making the calculation that was uncertain").

¶ 68 Accordingly, prejudgment interest on the stock appreciation bonus is appropriate and the court erred in denying prejudgment interest on that item. We reverse the trial court's ruling on this issue, and Kraatz is hereby awarded prejudgment interest on the $90,000 stock appreciation bonus at the proper statutory rates.

### B. Prejudgment interest on the profit sharing bonus

¶ 69 With respect to the profit-sharing bonus, Heritage argues that Kraatz may not recover prejudgment interest because the parties disagree on the amount owing and because the amount is not liquidated and fixed. Two problems persist in Heritage's argument, however. First, Utah law does not disallow prejudgment interest just because the parties present conflicting testimony. Heritage cites *James Constructors, Inc.* as authority for this proposition, but *James Constructors, Inc.* says nothing supporting Heritage's argument. *See James Constructors, Inc.*, 888 P.2d at 671–72. Rather, the controlling principle in prejudgment interest determinations is whether "the loss is fixed as of a particular time, and that loss can be measured by facts and figures." *Bjork*, 560 P.2d at 317.

¶ 70 In the case at hand, the court can look to objective "facts and figures," *id.*, namely Heritage's profit reports, to determine the profits against which Kraatz's bonuses should be calculated. This suggests the second problem with Heritage's argument. Heritage now argues that the profits are not a liquidated and fixed amount for purposes of awarding prejudgment interest. At the same time, however, Heritage argues that its profit reports to American Honda fix the amount of those profits for purposes of calculating profit-sharing bonuses. Heritage cannot have it both ways: either the profits were fixed, or they were not. We have already determined that Heritage's profit reports control the amount owing for purposes of calculating profit-sharing bonuses, and it necessarily follows that such a fixed sum "can be measured by facts and figures" sufficient to allow prejudgment interest. *Id.*

¶ 71 Heritage argues that because Kraatz sought adjustment to the profit reports, even though we are constrained by the express language of the contract to give binding effect to those profit calculations, Kraatz may not now claim the damages are fixed and liquidated. However, even if we were to assume any logical consistency in this argument, Utah law nevertheless allows prejudgment interest where "[t]he amount due under

the contract was ascertainable by calculation and it was only the method to be used in making the calculation that was uncertain." *Jack B. Parson Constr. Co.*, 552 P.2d at 109. In this case, the only point of dispute centers around what accounting methods ought to be used in calculating the profits, not whether Heritage's profits lend themselves in the first place to mathematical calculation of "facts and figures." *Bjork*, 560 P.2d at 317.

¶ 72 We hold that the profit-sharing bonuses were fixed and capable of precise mathematical calculation. Thus, prejudgment interest on the profit-sharing bonuses is appropriate. The trial court erred in denying prejudgment interest on that component of the damage award. Accordingly, we reverse the trial court's ruling with respect to this issue and remand for a determination and award of prejudgment interest owing on those amounts.

C. Prejudgment interest on Kraatz's consequential damages

¶ 73 Kraatz is clearly entitled to prejudgment interest on his consequential damages. Every item of consequential damages—the 401(k) contributions, Christmas bonuses, warranty income, and Jazz tickets—are complete without independent determination by the trial court and are ascertainable with reference to facts and figures. Thus, the trial court erred in refusing to grant Kraatz prejudgment interest on the consequential damages. Accordingly, we reverse the trial court's ruling with respect to this issue and remand for a determination and award of prejudgment interest owing on those amounts should the trial court ultimately award those damage amounts.

D. Prejudgment interest on attorney fees [15]

¶ 74 Kraatz signed a valid agreement with his attorneys to pay them a minimum of $10,000, plus additional sums contingent upon the outcome of the case. Kraatz

seeks prejudgment interest only against the minimum $10,000 fee.

¶ 75 The general rule allows recovery for prejudgment interest "where the damage is complete and the amount of the loss is fixed as of a particular time." *Bjork*, 560 P.2d at 317. The purpose of awarding prejudgment interest is to compensate for the full loss suffered by the plaintiff in losing the use of the money over time. Plaintiffs

> are entitled to damages for the loss of use of the money that, but for the [defendant]'s breach and ensuing delay, would have been paid to plaintiffs in satisfaction of their ... claim.... In Utah, prejudgment interest "represents an amount awarded as damages due to [the opposing party's delay in] tendering the amount owing under an obligation."

*Castillo v. Atlanta Cas. Co.*, 939 P.2d 1204, 1212 (Utah Ct.App.1997) (quoting *L & A Drywall, Inc. v. Whitmore Constr. Co.*, 608 P.2d 626, 629 (Utah 1980)) (alterations added to correctly quote *L & A Drywall, Inc.*). *See also Canyon Country Store v. Bracey*, 781 P.2d 414, 422 (Utah 1989) (indicating prejudgment interest serves to restore full loss).

¶ 76 Our review of the record does not indicate whether Kraatz was required by his agreement to pay the attorney fees up front. A claim for prejudgment interest on attorney fees might be permissible where the plaintiff and the plaintiff's counsel have agreed to "a fixed amount set forth in a valid attorney fees agreement," *James Constructors, Inc.*, 888 P.2d at 672, as in this case. However, it would contradict the purpose of prejudgment interest to award prejudgment interest to Kraatz if he did not pay the fees prior to judgment because he would have suffered no loss of the time value of the attorney fees in question. If such is the case, then "the damage is [not] complete and the amount of the loss is [not] fixed as of a particular time." *Bjork*, 560 P.2d at 317. If, on the other hand, Kraatz did pay the attorney fees prior to judgment, then "the damage is complete

---

**15.** Kraatz argued in his first brief that he should be awarded prejudgment interest on the entire amount of recoverable attorney fees. However, in his second brief, Kraatz admitted that most of those fees, while recoverable, were nevertheless uncertain and unfixed for purposes of awarding prejudgment interest because they were awarded pursuant to a contingency agreement. Accordingly, we will analyze only the remaining amount in dispute.

and the amount of the loss is fixed as of a particular time." *Id.*

¶ 77 However, it is axiomatic that Kraatz had the burden of producing evidence demonstrating his entitlement to prejudgment interest on attorney fees. This included the necessity of proving that he actually paid the fees prior to judgment, a burden he did not meet. Because Kraatz did not produce evidence that he paid the fees prior to judgment, we cannot say that the trial court committed reversible error by denying his claim for prejudgment interest on those fees. Accordingly, we affirm the trial court's judgment on this issue.

### E. Prejudgment interest on expert witness fees [16]

¶ 78 The above analysis also applies to Kraatz's claim for prejudgment interest on his expert witness fees. "The general rule is that 'where the damage is complete and the amount of loss is fixed as of a particular time, and that loss can be measured by facts and figures, interest should be allowed from that time.'" *Trail Mt. Coal Co. v. Utah Div. of State Lands & Forestry*, 921 P.2d 1365, 1371 (Utah 1996) (quoting *Bjork*, 560 P.2d at 317). The purpose is to restore to the plaintiff the time value of money lost through a defendant's breach. *See Castillo*, 939 P.2d at 1212.

¶ 79 As with Kraatz's attorney fees, the record does not indicate whether Kraatz made any prejudgment outlays with respect to the expert witness fees entitling him to prejudgment interest. Unless Kraatz actually paid money, thus losing the benefit of the use of that money over time, the purpose of prejudgment interest would not be served and Kraatz would receive an unfair windfall. However, if he did make prejudgment payments to the experts in question, he would be entitled to prejudgment interest.

¶ 80 The trial court made no finding with respect to whether Kraatz paid the expert witnesses prior to judgment. It is axiomatic

that Kraatz had the burden of producing evidence demonstrating his entitlement to prejudgment interest on expert witness fees. This included the necessity of proving that he actually paid the fees prior to judgment, which he did not do. Because Kraatz did not produce evidence that he paid the fees prior to judgment, we cannot say that the trial court committed reversible error by denying his claim for prejudgment interest on those fees. Accordingly, we affirm the trial court's judgment on this issue.

### F. Prejudgment Interest on Relocation Expenses

¶ 81 Our general analysis of prejudgment interest also applies to Kraatz's request for prejudgment interest on the relocation expenses. We have already determined that Kraatz is entitled to $2,210.53 in direct damages pursuant to the express terms of the contract. This damage amount is ascertainable with reference to facts and figures, and was complete as of a particular time. Accordingly, Kraatz is entitled to prejudgment interest on this amount, and the judgment of the trial court in this respect is reversed.

### CONCLUSION

¶ 82 We affirm the judgment of the trial court awarding Kraatz $90,000 for his stock appreciation rights because Kraatz failed to show the court clearly erred in its finding of the value of the dealership.

¶ 83 We also affirm the trial court's profit bonus award because the express terms of the employment agreement gave Heritage the unilateral right to determine its profits for purposes of calculating the profit sharing bonus.

¶ 84 We reverse the trial court's refusal to award deposition costs and expert witness fees because the express terms of the contract provide for their recovery. We remand this issue to the trial court for a determination of the reasonableness of those costs and

---

16. Kraatz originally sought prejudgment interest for a variety of other litigation costs and expenses, including deposition costs. However, Kraatz withdrew these claims in light of the contingent nature of his obligation to pay those

expenses. Thus, in his second brief, Kraatz claims entitlement to prejudgment interest only on his "damage claims, on his expert witness costs, and on the non-contingent $10,000 in attorney fees."

fees in enforcing the contract and for an award consistent with this opinion.

¶ 85 We affirm the trial court's ruling denying recovery for the value of the business and non-business use of the club memberships. However, the trial court erred in denying recovery for the basic values of the memberships themselves. Accordingly, we remand for the trial court to enter a finding regarding the value of the club memberships and to award Kraatz damages in that amount.

¶ 86 The trial court erred in denying recovery of $2,210.53 for the amounts owing for the St. George home. The trial court's ruling in this respect is reversed, and Kraatz is hereby awarded $2,210.53 for this claim.

¶ 87 The trial court correctly applied the express terms of the contract with respect to unreimbursed health care expenses. Accordingly, we affirm the trial court's award in this respect.

¶ 88 The trial court erred in failing to apply the *Mahmood* three-part test to determine whether Kraatz is entitled to consequential damages. Thus, we remand the consequential damages claims to the trial court for further proceedings to properly apply the three-part test. However, we affirm the trial court's refusal to award Kraatz the value of the non-business expenses of the club memberships as consequential damages.

¶ 89 The trial court did not abuse its discretion in its attorney fee award to Kraatz, and we affirm its judgment in this respect.

¶ 90 The trial court erred in denying recovery of prejudgment interest on the stock appreciation rights, profit-sharing bonus, 401(k) contributions, Christmas bonuses, warranty income, Jazz tickets, and relocation expenses. Accordingly, the trial court's judgment in this respect is reversed and remanded. In the event that the trial court determines that Kraatz is entitled to consequential damages, the trial court must determine prejudgment interest pursuant to the appropriate statutory rates. However, the trial court correctly ruled that prejudgment interest should not be applied to the attorney and expert witness fees, and the trial court's ruling in this respect is affirmed.

¶ 91 Pursuant to the express terms of the employment agreement, Kraatz is entitled to costs, expenses and attorney fees on appeal. Thus, we remand with instructions to the trial court to determine the appropriate amount and to enter judgment accordingly.

¶ 92 WE CONCUR: JAMES Z. DAVIS, Judge, and WILLIAM A. THORNE JR., Judge.