2011 Ark. 447

**Ben STILL, Appellant**

v.

**The PERRONI LAW FIRM, Appellee.**

**No. 10–948.**

Supreme Court of Arkansas.

Oct. 27, 2011.

Michael Lipscomb & Associates, by: Michael R. Lipscomb, Hot Springs, for appellant.

Raymond A. Harrill, Little Rock, for appellee.

ROBERT L. BROWN, Justice.

This is an appeal from an order granting summary judgment in favor of appellee, The Perroni Law Firm (hereinafter Perroni).[1] Because of a violation of the statute of limitations regarding oral contracts, we reverse the order of the circuit court and dismiss.

In December 1998, appellant, Ben Still, and his wife, Allison Still, hired Samuel Perroni of the Perroni and James Law Firm[2] to provide legal services in connection with an investigation being conducted by the United States Department of Transportation and the United States Attorney's Office pertaining to allegations involving the sale and titling of crash-test[2] vehicles. On December 2, 1998, a contract for legal services was signed by Still[3] and Perroni, wherein Still agreed to pay Perroni $25,000 for work done prior to an indictment being filed. Additionally, a provision was included in the contract that would require a new and separate contract, if legal proceedings in the nature of defending an indictment occurred.

On December 15, 1999, the United States Attorney filed a twelve-count indictment against the Stills for wire fraud, conspiracy, and mail fraud. The government alleged that the Stills obtained unrestricted titles for crash-test vehicles, which had been sold for salvage only, by means of false documents and representations and that these vehicles were then resold to consumers. Perroni and Still met at Perroni's office on December 16, 1999, to discuss Perroni's representation of Still subsequent to the indictment. Perroni sent a letter to Still on December 21, 1999, confirming his representation in the matter. In his letter, Perroni agreed to represent

---

1.  For clarity purposes, the use of "Perroni" in this opinion will refer to both Samuel Perroni, individually, and The Perroni Law Firm, as Samuel Perroni's representation of Ben Still was done on behalf of and for the benefit of The Perroni Law Firm.

2.  In December 1998, appellee The Perroni Law Firm was conducting business as the Perroni and James Law Firm.

3.  Ben Still signed the December 2, 1998 contract for legal services on behalf of himself

and his wife, Allison Still. Allison Still consistently maintained throughout the action below that she never hired The Perroni Law Firm or the Perroni and James Law Firm and that she had a separate attorney who represented her interests. Although The Perroni Law Firm filed the complaint against both Ben Still and Allison Still, Allison Still was dismissed from the action on March 3, 2010. For the purposes of this appeal, as Ben Still is the only appellant, the court will refer to Ben Still only.

Still for a fee of $65,000.00 and to give Still "credit for the $25,000.00 retainer," leaving Still with a "balance due of $40,000.00." Perroni added that he "would appreciate it if [Still] would pay that fee as expeditiously as possible." The letter also informed Still that he would be responsible for any out-of-pocket expenses, which Perroni estimated at about $35,000.00. He stated that he would bill Still on a monthly basis for those expenses.

In the months following the indictment, Perroni proceeded to file several motions on behalf of Still. Perroni's client-ledger report and monthly billing statements reflected that Still made the following payments on the account: (1) $10,000.00 payment on March 6, 2000; (2) $1,542.37 payment on March 13, 2000; (3) $10,000.00 payment on May 31, 2000; and (4) $1,500.00 payment on October 13, 2000.

On May 19, 2000, a security agreement was executed and signed by Still and Perroni to secure payment of the legal fees. The security agreement contained the following language:

> The security interest granted hereby is to secure payment of any and all present and future unpaid legal fees and unknown expenses in an amount not to exceed $100,000 and also any and all other liabilities of Debtor [Ben Still] to Secured Party [Perroni], direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, especially including all rents and advances of every kind (all hereinafter called the "Obligations").

The Stills' trial was set for January 29, 2001, in the federal district court. Perroni filed two motions to dismiss the indict-

ment, and the government also moved to dismiss it on the basis that new information had surfaced concerning a crash-test vehicle that had been sold to Perroni and that was similar to those charged in the indictment. On January 23, 2001, the federal district court granted the government's motion to dismiss the indictment against the Stills without prejudice.

On July 12, 2001, a second indictment was filed against the Stills. Perroni did not represent Still in this case, and Still was appointed a public defender for representation. Perroni continued to send Still monthly billing statements for the legal fees due on the representation relating to the first indictment. Perroni's client-ledger report and monthly billing statements reflected that interest was being charged on the account on a monthly basis.

On May 18, 2005, Perroni filed a complaint against the Stills [4] to recover unpaid legal fees in connection with his representation of the Stills in connection with the first indictment. Still and Perroni both filed cross-motions for summary judgment. Still's motion, filed on February 16, 2010,[5] raised the argument that Perroni's action was barred by the three-year statute of limitations set forth in Arkansas Code Annotated section 16–56–105. Perroni's motion for summary judgment, filed on March 24, 2010, contended that there was no material issue of fact remaining, because it was clear that a contract for legal services was entered into by the parties, consideration was agreed upon, performance on the part of Perroni was delivered, and Still failed to pay.

On April 19, 2010, the circuit court held a hearing to consider the parties' cross-

4. As stated previously, Allison Still was dismissed from this action on March 3, 2010.

5. The circuit court originally denied Still's motion for summary judgment on the ground that it was untimely filed. The court, however, later allowed Still to renew his motion to be considered on the merits.

motions for summary judgment. On June 4, 2010, the court entered an order denying Still's motion for summary judgment and granting Perroni's motion for summary judgment. Specifically, the court found that "the acknowledgment of debt to [Perroni] by [Still] contained within the security agreement, Exhibit C to the Complaint, signed and dated by [Still], is sufficient acknowledgment of the debt, to bring the matter within the five-year statute of limitations on written obligations. The Complaint was filed within five years of the acknowledgment." The court also concluded in its order that after considering the arguments of counsel, pleadings, and exhibits, Still "failed to meet proof with proof, and therefore there is no remaining issue of fact in dispute."

This court's standard of review for summary judgment is well settled:

> Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. Once a moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact.

*Jackson v. Sparks Reg'l Medical Center,* 375 Ark. 533, 539, 294 S.W.3d 1, 4 (2009).

Still claimed in his motion for summary judgment, in his response to Perroni's motion for summary judgment, and on appeal that Perroni's action for recovery of unpaid legal fees was barred by the three-year statute of limitations governing contracts or obligations not in writing. On appeal, he continues to maintain that to the extent that there was a contract for legal services with Perroni, the security agreement signed by him on May 18, 2000, did not convert his oral obligation into a written one so as to bring it within the five-year statute of limitations for written agreements.

Initially, we note that the Arkansas Code regarding limitations of actions provides that "[a]ll actions founded upon any contract, obligation, or liability not under seal and not in writing" shall be commenced within three years after the cause of action accrues. Ark.Code Ann. § 16–56–105 (1987). The Code further provides that "[a]ctions to enforce written obligations, duties, or rights ... shall be commenced within five (5) years after the cause of action shall accrue." Ark.Code Ann. § 16–56–111 (1987).

Still emphasizes that the only written agreement between the parties was the December 2, 1998 contract for legal services, which related to Perroni's representation pre-indictment. He further urges that to the extent that there was an agreement between the parties concerning Perroni's representation of Still post-indictment, it was an oral agreement, making the three-year statute of limitations applicable. Perroni counters, and the circuit court clearly found, that the written security agreement signed by Still on May 18, 2000, was a written acknowledgment of the debt that transformed the contract into one in writing and was sufficient to bring his cause of action within the five-year statute of limitations for written obligations. Still asserts in response that the security agreement was merely an acknowledgment of an oral agreement and that it in no way removed the underlying oral agreement from the three-year statute of limitations.

Perroni admits in his brief on appeal that his December 21, 1999 letter "is evidence of an oral agreement concerning Perroni's representation of Mr. Still." He further admits that absent the subsequent

written acknowledgment of the debt by Still, the three-year statute of limitations would have applied. Accordingly, it is undisputed that the December 1999 agreement concerning post-indictment representation was oral and was governed at the outset by section 16–56–105.

To repeat in part, the security agreement signed and executed on May 19, 2000, contained the following language:

> The security interest granted hereby is to secure payment of any and all present and future unpaid legal fees and unknown expenses in an amount not to exceed $100,000 and also any and all other liabilities of Debtor [Still] to Secured Party [Perroni], direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, especially including all rents and advances of every kind (all hereinafter called the "Obligations").

Under the terms of the security agreement, Still granted Perroni a security interest in the following property:

> All tangible property, wherever located and whether presently existing or to be acquired, including but not limited to consumer goods, inventory, and equipment.

> All intangible property, wherever located and whether presently existing or to be acquired, including but not limited to accounts, instruments, documents, chattel paper, and general intangibles.

The precise terms of the original oral agreement, however, were not set out in the security agreement.

On the question of whether there was a written acknowledgment of the existence of a specific debt sufficient to create a new period from which the statute of limitations runs, this court has said:

> In considering whether there has been a sufficient acknowledgment in writing to toll the statute of limitations, the question to be determined is the intention of the debtor. It is generally held to be sufficient if, by fair construction, the writing constitutes an admission that the claim is a subsisting debt unaccompanied by any circumstances repelling the presumption of the party's willingness or intention to pay.

*Street Improvement Dist. No. 113 of City of Hot Springs v. Mooney,* 203 Ark. 745, 750, 158 S.W.2d 661, 664 (1942).

This court has further said that an acknowledgment of the claim as an existing obligation is such an admission that the law will imply from it a new promise to pay, which will start the statute running anew, when the acknowledgment is not accompanied by anything that negates the presumption of an intention to pay the debt. *Walker v. Mullins,* 204 Ark. 939, 165 S.W.2d 607 (1942). In order for an acknowledgment of a debt to be sufficient to extend the time for filing an action upon the indebtedness, there must be an unconditional promise to pay or the circumstances must be such that such a promise can be inferred from the writing itself, and the unconditional promise to pay must be made by the parties from whom the debt is due to the parties to whom payment of the debt is due. *McMahon v. O'Keefe,* 213 Ark. 105, 209 S.W.2d 449 (1948).

This court has never specifically addressed the question of whether a *security agreement* is a sufficient acknowledgment of a debt that will toll the statute of limitations. Several other states, however, have clearly determined that the grant of a security interest in property owned by the debtor for the debt is such an acknowledgment of the debt to evidence a continuing obligation so as to imply a promise of payment. *See Gazza v. United California Bank Int'l,* 88 A.D.2d 968, 451 N.Y.S.2d 806, 809 (1982) (recognizing that "the giv-

ing of security may constitute a sufficient acknowledgment of a debt so as to toll the Statute of Limitations.); *In re Jorgensen's Estate,* 70 Ill.App.2d 398, 217 N.E.2d 290, 292 (1966) (agreeing that [9 the "decedent's delivery to claimant ... of ... shares of stock ... as security of the debt constituted an unequivocal acknowledgment of the existence of the debt and a waiver of the defense of the Statute of Limitations."); *Wagner v. Mutual Life Ins. Co. of New York,* 88 Conn. 536, 91 A. 1012, 1015 (1914) (finding that "[t]he giving of security for a debt barred by the statute of limitations ... operates as an unequivocal acknowledgment of the existence of the debt, from which the law implies a promise to pay the debt.").

■ Based on the language of the security agreement signed by Still, we conclude that it was a sufficient acknowledgment of an existing debt so as to start the statute-of-limitations period running anew. Although the language of the security agreement does not specifically reference Perroni's representation of Still in the criminal case, there was a clear acknowledgment that security was being given in certain property owned by Still in order to secure payment of present and future unpaid legal fees and expenses. This is an express acknowledgment of the validity of the debt for unpaid legal fees.

That fact, however, does not answer the question now before us, which is what was the effect of that security agreement on the issue of whether the contract for legal services was oral or in writing. Perroni argues, and the circuit court found, that this acknowledgment in the security agreement was enough to remove the underlying oral contract for representation from the three-year statute of limitations and

transform it into a written obligation governed by the five-year statute of limitations. For his conclusion, Perroni relies solely on this court's decision in *Blake v. Commercial Factors Corp.,* 216 Ark. 664, 226 S.W.2d 986 (1950).

[10 In *Blake,* H.L. Blake, the appellant, bought several shipments of merchandise from Gainor Sales Company of Philadelphia, Pennsylvania, who later assigned its account against Blake to appellee, Commercial Factors Corporation. The controversy in *Blake* involved two shipments that were made on March 1, 1945, and March 5, 1945. In August 1945, Blake wrote a letter to Gainor after receiving the two March shipments and recognized the correctness of the invoice dated March 1st but contested the March 5th invoice. He claimed that he returned a portion of the shipment indicated on the March 5th invoice and asked Gainor to straighten out the March 5th invoice and send him the corrected amount due. Then, he stated, he would mail Gainor a check for the outstanding balance.

On May 7, 1948, suit was filed by Gainor's assignee, Commercial Factors Corporation, for the recovery of a balance alleged to be due on Blake's account. Blake denied the allegations in the complaint and asserted that the claim was barred by the three-year statute of limitations, which at the time, was found at Arkansas Statutes Annotated section 37–206 (1947).[6] This court considered the question of what constituted a sufficient written acknowledgment of a debt to toll the statute of limitations and noted that "there must be either an express promise of the debtor to pay the debt, or an acknowledgment of the debt, from which a promise to pay is to be

---

**6.** This statute is now the three-year statute of limitations for "[a]ll actions founded upon any contract, obligation, or liability not under

seal and not in writing." Ark.Code Ann. § 16–56–105 (Repl.2005).

implied; or a conditional promise to pay the debt and evidence that the condition has been performed." *Blake*, 216 Ark. at 666–67, 226 S.W.2d at 987. We held that the letter written by Blake "established a new period from which the statute of limitations began to run" because "[t]here was a clear acknowledgment of the correctness of the invoice of March 1, 1945," and there was a "promise to pay the account ... contingent upon the allowance of credit on the invoice of March 5, 1945." *Id.* at 667, 226 S.W.2d at 987.

What is important for purposes of our discussion today is that this court never said in the *Blake* opinion that the acknowledgment of the debt and tolling of the statute converted the oral contract into one in writing. This court specifically said in *Blake* that the "trial court was warranted in holding that [Blake's letter] established *a new period from which the statute of limitations began to run.*" *Blake*, 216 Ark. at 667, 226 S.W.2d at 987 (emphasis added). This holding, however, does not remove the cause of action from the three-year statute of limitations and place it within the five-year limitations period. We conclude from the language of the *Blake* opinion that the written acknowledgment merely tolled the statute of limitations and restarted the original statute of limitations of three years.

Our conclusion is supported by this court's opinion in *Shelton v. Harris*, 225 Ark. 855, 286 S.W.2d 20 (1956). In *Shelton*, the appellant lent the decedent, Ella Hampton, $405 upon Hampton's oral promise to repay the money in full by the fall of 1949. Hampton died before repaying the loan; however, prior to her death, she endorsed and pledged an overdue rent note for $450, on which she was the payee, to appellant as security for the loan. Appellant contended on appeal that her claim was converted to demand upon a written contract, instead of an oral contract, based on the endorsed, overdue note. This court, however, rejected this argument and found that the borrower's act of endorsing a past-due note did not have the effect of reducing to writing her oral promise to repay the loan. *Shelton*, 225 Ark. at 857, 286 S.W.2d at 21. Although *Shelton* does not specifically address the concept of an acknowledgment of a debt and tolling of the statute of limitations, the *Shelton* court did hold that written security in the form of a note did not transform the original oral agreement to repay a loan into a written obligation. These facts and that conclusion are analogous to those in the instant case.

Moreover, other states that have been presented with a similar issue have concluded the same. For example, in *First National Securities Corp. v. Hott*, 162 Ohio St. 258, 122 N.E.2d 777 (1954), the Ohio Supreme Court held that a written memorandum evidencing an oral employment contract did not convert the oral contract into a contract in writing. The court explained that "[t]he memorandum may acknowledge the oral contract so as to establish its existence and thus extend the period of limitation for six years from the date of the memorandum ... but the contract would remain oral and subject to the six-year rather than the 15–year limitation" applicable to actions brought upon written contracts or agreements. *Hott*, 122 N.E.2d at 779. Similarly, the Court of Appeals of Kentucky has found a written acknowledgment of the existence of a debt in an ex parte petition did not constitute a "written contract" within the meaning of the statute of limitations, but was simply a new promise based upon the original oral contract which was controlled by the statute of limitations applicable to oral contract. *Mellema's Adm'r v. Whipple*, 312 Ky. 13, 226 S.W.2d 318 (1950).

We conclude that the reasoning in *Shelton* and other state courts, combined with the lack of language in *Blake* and other cases concerning whether a written acknowledgment of a debt converts an oral obligation into a written contract, supports the conclusion that the security agreement merely acknowledged the debt agreed to in the oral agreement between Perroni and Still and extended the limitations period for an oral contract for another three years. However, the acknowledgment of the debt in no way removed that original agreement from an extended three-year statute of limitations; nor did it convert the limitations period into a five-year term.

We are further cognizant of the fact that the security agreement never purported to be a written contract for legal services. Indeed, it failed to include the essentials for such a contract, including the parties to be bound, the consideration given, or the subject matter. *See DaimlerChrysler Corp. v. Smelser*, 375 Ark. 216, 289 S.W.3d 466 (2008). It would be an oddity for us to hold that an instrument that does not pretend to be a written contract for legal services or even an acceptance of the same assumes that identity.

We hold that the three-year statute of limitations, as extended from the date of the security agreement, applied and the suit was time-barred three years after the date of the acknowledgment of the debt by Still in that security agreement. Accordingly, we reverse the order of the circuit court and dismiss for violation of the statute of limitations.

Reversed and dismissed.

BAKER, J., not participating.