*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2013 UT 35**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

DON S. REDD,
*Plaintiff and Appellee,*

*v.*

VIRGINIA HILL,
*Defendant and Appellant.*

No. 20120552
Filed June 18, 2013

Second District, Farmington
The Honorable Glen R. Dawson
No. 110702023

Attorneys:

Stephen I. Oda, Layton, for appellee

Gregory B. Wall, Cory R. Wall, Salt Lake City, for appellant

JUSTICE PARRISH authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, and JUSTICE LEE joined.

JUSTICE PARRISH, opinion of the Court:

### INTRODUCTION

¶1　At issue in this appeal is the question of whether a contingency fee agreement extends to an award of attorney fees. Appellant Virginia Hill entered into a contingency fee agreement (Agreement) with attorney and Appellee Don Redd. The Agreement stated, in part, that "Attorney is entitled to ONE THIRD (33 1/3%) of all monies paid to or in client[']s behalf for what ever [sic] cause related to this cause of action." Hill does not dispute that she willingly signed the Agreement or that Redd is entitled to one-third of Hill's primary award. Hill does dispute, however, that the Agreement entitles Redd to one-third of the court-awarded attorney fees.

¶2　We hold that the Agreement is unambiguous. Under its terms, Redd is entitled to one-third of both the primary judgment and the court-awarded fees.

## BACKGROUND

¶3 In anticipation of filing competing motions for summary judgment below, the parties submitted Stipulated Facts for Joint Motions for Summary Judgment (Stipulated Facts). We rely on these Stipulated Facts in setting out the pertinent background.

¶4 "In the early 1990s, Hill invested approximately $1.5 million with certain individuals, which monies were not properly used for the purposes intended." Hill hired Redd to help her recover her misappropriated investment. Redd drafted the Agreement, which both parties signed on August 29, 1997. The Agreement states, in relevant part, that "Attorney is entitled to ONE THIRD (33 1/3%) of all monies paid to or in client[']s behalf for what ever [sic] cause related to this cause of action." The Agreement further states that "[i]n the event legal proceedings are necessary to enforce the terms of this agreement, the defaulting party agrees to pay a reasonable attorney fee plus costs of Court."

¶5 Over the next thirteen years, Redd represented Hill in "various legal proceedings . . . against the various defendants." The underlying action "resulted in a judgment in favor of Hill for the amount of $6,144,854.79." The judgment included both punitive damages and prejudgment interest.

¶6 Following the entry of judgment, Hill retained the law firm of Wall & Wall to represent her in seeking to recover her attorney fees. Hill argued that attorney fees should be calculated based on her one-third obligation under the Agreement. But the district court determined that "[attorney] fees should be based upon an hourly rate charged to Hill [under the Lodestar formula] rather than any contingent fee amount for which she may be responsible to her attorney." The district court thereafter determined that reasonable attorney fees were $593,034.40 and awarded a supplemental judgment in this amount.

¶7 Hill has collected both the underlying judgment and the court-awarded attorney fees, and has paid Redd $2,046,236.60, representing one-third of the $6,144,854.79 primary judgment. She has not, however, paid Redd any portion of the supplemental attorney fees award.

¶8 Redd filed a Demand for Payment as to his claim to one-third of the $593,034.40 attorney fees award. After he did not receive the requested payment, Redd filed an attorney's lien against his asserted one-third share. Redd's lien was subsequently denied by

the district court. Redd then filed a declaratory action seeking a declaration that he was entitled to one-third of Hill's attorney fees award.

¶9    After jointly submitting the Stipulated Facts, the parties filed cross motions for summary judgment urging their divergent interpretations of the Agreement. The district court ruled in favor of Redd. It reasoned that

> the language in the fee agreement is unambiguous, [and] it applies the contingency fee to all money paid to the client for whatever cause. The plain meaning of the contingency fee agreement is that the 33 1/3% would apply to any award or judgment, whether for general damages, punitive damages, or attorney[] fees.

Therefore, the district court held that "the only possible interpretation [of the Agreement] is that [Redd] should receive 33 1/3% of the $593,034.40 in attorney[] fees awarded to [Hill]."

¶10    Hill timely appealed the district court's final order and raises the question of whether "[Redd] is entitled to a judgment against [Hill] under the [Agreement] entered into by the parties for one-third of the attorney fee[s] award granted by the [d]istrict [c]ourt in a separate proceeding, plus one-third of the whole or primary judgment."

¶11    After the district court entered its final judgment and after Hill filed her notice of appeal, Redd filed a motion in the district court for augmentation of judgment, seeking his attorney fees arising from the declaratory action. He then filed a petition for supplemental relief under Utah Code section 78B-6-406, restating the claims he made in his motion for augmentation. The district court denied Redd's motion for augmentation in favor of proceedings on the supplemental relief petition but has not yet ruled on the matter.

¶12    In this court, Redd filed a motion seeking summary disposition of his appeal. We declined Redd's invitation to rule on summary disposition and deferred that motion pending plenary presentation on the merits. We have jurisdiction under Utah Code section 78A-3-102(3)(j).

**STANDARD OF REVIEW**

¶13    Summary judgment is proper only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." UTAH R. CIV. P. 56(c). "In considering a grant of summary judgment, we review the [district]

3

court's legal decision for correctness, giving no deference, and review the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Peterson v. Coca-Cola USA*, 2002 UT 42, ¶ 7, 48 P.3d 941 (internal quotation marks omitted.)

¶14 Because the parties stipulated that "[t]here are no private understandings, side agreements, or other writings" related to the Agreement, the district court was not required to look beyond the four corners of the Agreement when it ruled on summary judgment. "Questions of contract interpretation not requiring resort to extrinsic evidence are matters of law, and on such questions we accord the trial court's interpretation no presumption of correctness." *Zions First Nat'l Bank, N.A. v. Nat'l Am. Title Ins. Co.*, 749 P.2d 651, 653 (Utah 1988).

¶15 Finally, "[w]hether attorney fees are recoverable in an action is a question of law, which we review for correctness. However, the district court has broad discretion in determining what constitutes a reasonable fee, and we will consider that determination against an abuse-of-discretion standard." *Softsolutions, Inc. v. Brigham Young Univ.*, 2000 UT 46, ¶ 12, 1 P.3d 1095 (alteration in original) (citation and internal quotation marks omitted).

**ANALYSIS**

I. REDD IS ENTITLED TO ONE-THIRD OF THE
ATTORNEY FEES AWARD BASED ON THE
PLAIN LANGUAGE OF THE AGREEMENT

¶16 Hill argues that the Agreement is ambiguous because it does not directly address the allocation of attorney fees and that the ambiguity should be strictly construed against Redd, who drafted the Agreement. Redd counters that the Agreement is plain on its face and that the intent of the parties should be determined from the language of the Agreement. We agree with Redd.

¶17 We begin our analysis with an examination of "the language of [the Agreement] to determine meaning and intent." *Glenn v. Reese*, 2009 UT 80, ¶ 10, 225 P.3d 185. "Where the language is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the [Agreement] may be interpreted as a matter of law." *Id.* (internal quotation marks omitted). If, however, the Agreement is ambiguous, we turn to extrinsic evidence to determine the intent of the parties. *Daines v. Vincent*, 2008 UT 51, ¶ 25, 190 P.3d 1269. Because the Agreement involves a disputed fee, any ambiguity is "resolved against the

attorney and the construction adopted which is favorable to the client." *Jones, Waldo, Holbrook & McDonough v. Dawson*, 923 P.2d 1366, 1372 (Utah 1996) (internal quotation marks omitted).

¶18 Ambiguity exists if a contractual term or provision "is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *WebBank v. Am. Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 20, 54 P.3d 1139 (internal quotation marks omitted); *see also Ward v. Intermountain Farmers Ass'n*, 907 P.2d 264, 268 (Utah 1995) (stating that an ambiguous interpretation must be "reasonably supported by the language of the contract").

¶19 The Agreement states that "[Redd] is entitled to ONE THIRD (33 1/3%) of *all monies* paid to or in [Hill's] behalf *for what ever* [sic] *cause* related to this cause of action." (Emphasis added.) It is uncontested that Redd was retained to represent Hill in the underlying case. It is also uncontested that the district court awarded attorney fees as a result of that representation. Thus, it cannot be contested that the attorney fees award was "paid to or in [Hill's] behalf" with respect to the "cause of action" referred to in the Agreement.

¶20 Though the Agreement does not specifically address the allocation of general damages, punitive damages, or attorney fees, the language of the contested provision embraces all such recoveries. The Agreement states that Redd receive one-third of "all monies" paid to Hill "related to" Ms. Hill's "cause of action." Webster's Dictionary defines "all" as "the whole extent or quantity of," "the entire number of," "every one of," and "any." WEBSTER'S NEW COLLEGE DICTIONARY 36 (2007). The district court's award of attorney fees falls within the definition of "all monies," inasmuch as it was undoubtedly part of the "extent or quantity of" the money awarded to Hill based on Redd's representation of Hill in the underlying case. And the attorney fees award was "one of" the components of "all monies" paid to Hill as a result of that lawsuit. Because the language of the Agreement embraces the court's award of attorney fees, Redd is entitled to one-third of that award.

## II. THE AGREEMENT IS NOT IN CONFLICT WITH THE UTAH RULES OF PROFESSIONAL CONDUCT

¶21 Hill next asserts that we possess the longstanding right to monitor fee agreements, and that allowing Redd to take a percentage of the attorney fees "thwart[s] the purpose of the award," which is "to make the []client whole." While we acknowledge our authority

to monitor and approve fee contracts, we hold that the Agreement is not improper as written or applied.

¶22    Rule 1.5 of the Utah Rules of Professional Conduct sets forth the requirements under which attorneys may enter into contingent fee agreements with their clients.  Rule 1.5 explicitly allows contingent fee agreements except in certain limited instances not implicated by the underlying action.[1]  In all cases, however, rule 1.5(c) requires that

> [a] contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated.

¶23    Many laypersons have no experience with contingent fee agreements.  Thus, rule 1.5(c) is designed to require that attorneys put clients on notice as to the particulars of the parties' obligations under contingent fee agreements.  But while rule 1.5(c) requires notice, it does not require the use of specific language, nor does it set out a form that Utah attorneys must use.

¶24    Here, the Agreement used ordinary language to describe the "method by which the fee is to be determined."  UTAH R. PROF'L COND. 1.5(c).  The Agreement states that "[Redd] is entitled to ONE THIRD (33 1/3%) of all monies paid to or in [Hill's] behalf for what ever [sic] cause related to this cause of action."  Thus, the Agreement unambiguously describes "the [recovery] percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal."  UTAH R. PROF'L COND. 1.5(c).  This language is not overly verbose, legalistic, nor buried in pages of small-print boilerplate.  In fact, the entire Agreement is contained on one type-written page.

¶25    As required by rule 1.5(c), the Agreement also put Ms. Hill

---

[1] Attorneys may not enter into contingency fee agreements "in a domestic relations matter [when] the payment . . . is contingent upon the securing of a divorce or upon the amount of alimony or support . . . [or to] represent[] a defendant in a criminal case."  UTAH R. PROF'L COND. 1.5(c)–(d).

on notice as to the method by which "litigation and other expenses [were] to be deducted from the recovery; and whether such expenses [were] to be deducted before or after the contingent fee [was] calculated." The Agreement states that the "[c]lient will be responsible for all costs and out-of-pocket expenses . . . from [the] client's share of the settlement proceeds."

¶26   Because the contingent representation was not prohibited by the Rules of Professional Conduct and the Agreement conforms to the requirements of rule 1.5(c), the district court did not err in enforcing the Agreement as written.

### III.  REDD IS NOT ENTITLED TO HIS ATTORNEY FEES IN THIS APPEAL

¶27   Redd asserts that he is entitled to attorney fees in this appeal based on rule 33 of the Utah Rules of Appellate Procedure, arguing that Hill's appeal is "frivolous" and does not present a justiciable issue. He also requests a provisional award of attorney fees based on the outcome of his Supplemental Relief Petition currently pending before the district court. Hill responds that she has presented a valid issue for appeal and that Hill's arguments based on his supplemental petition are improper. We agree with Hill. Redd's claim for attorney fees under rule 33 is without merit, and we lack jurisdiction to decide Redd's claim for attorney fees raised in his Supplemental Relief Petition before the district court.

¶28   Under rule 33, we have the authority to award attorney fees and costs as a sanction for a frivolous appeal. UTAH R. APP. P. 33(a). But the imposition of such a sanction is a serious matter and only to be used in egregious cases, lest the threat of such sanctions should chill litigants' rights to appeal lower court decisions. *See, e.g., Porco v. Porco*, 752 P.2d 365, 369 (Utah Ct. App. 1988). "Sanctions are appropriate for appeals obviously without merit, with no reasonable likelihood of success, and which result in the delay of a proper judgment." *Farrell v. Porter*, 830 P.2d 299, 302 (Utah Ct. App. 1992) (internal quotation marks omitted). We hold that Hill's appeal does not present such a case and sanctions under rule 33 are therefore inappropriate.

¶29   We next turn to Redd's claim for attorney fees based on the outcome of his petition for supplemental relief currently pending in the district court. Because Redd did not make a claim for attorney fees in his initial complaint for declaratory judgement and because the district court has yet to rule on his petition for supplemental relief, we lack jurisdiction over this claim.

¶30    Redd did not seek to recover attorney fees in his petition, nor did he petition the district court for leave to amend.  His claim for attorney fees was first raised after the entry of final judgment. We therefore lack jurisdiction to consider it.

## CONCLUSION

¶31    The Agreement is unambiguous on its face.  Because it accords with the Rules of Professional Conduct, the district court did not err when it enforced the Agreement as written.  Therefore, Redd is entitled to one-third of the court-awarded attorney fees in the underlying action.  Redd is not, however, entitled to attorney fees for this appeal because he failed to request attorney fees in his petition for declaratory judgment.