2014 UT App 251

# THE UTAH COURT OF APPEALS

RONALD E. GRIFFIN,
Plaintiff and Appellant,

*v.*

RICHARD H. CUTLER AND SANDRA S. CUTLER,
Defendants and Appellees.

Opinion
No. 20120351-CA
Filed October 23, 2014

Second District Court, Farmington Department
The Honorable Robert J. Dale
No. 060700032

Ronald E. Griffin, Appellant Pro Se

Richard H. Cutler and Sandra S. Cutler, Appellees
Pro Se[1]

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGE GREGORY K. ORME and SENIOR JUDGE RUSSELL W. BENCH
concurred.[2]

VOROS, Judge:

¶ 1    Ronald E. Griffin, an attorney, sued his former clients,
Richard H. Cutler and Sandra S. Cutler, for nonpayment of legal

---

1. The Cutlers filed no brief on appeal.

2. The Honorable Russell W. Bench, Senior Judge, sat by special
assignment as authorized by law. *See generally* Utah Code Jud.
Admin. R. 11-201(6).

fees. The trial court denied Griffin's fees on two grounds: that his claim was time-barred and that his fees were unreasonable. We affirm.

BACKGROUND

*Li v. Cutler*

¶ 2     Griffin represented the Cutlers in various legal matters, starting in 1993. The Cutlers leased commercial property from the Lis. In 1995, the Lis demanded that the Cutlers repave the property's parking lot. The Cutlers refused and the Lis sued. Griffin represented the Cutlers in *Li v. Cutler* from 1997 to 2001 or 2002. He filed a counterclaim on their behalf, alleging various causes of action. He also filed and responded to a number of pretrial motions that required briefing and appearance at court hearings. The Cutlers settled the case in February 2001 by paying the Lis $10,000. Griffin concluded his work on the case the following year.

*Griffin v. Cutler*

¶ 3     While representing the Cutlers, Griffin sent them several engagement letters. The current dispute centers on an engagement letter dated January 1, 2000. The letter stated that Griffin had increased his billing rate to $150 per hour and reiterated that he charged ten percent interest on balances over thirty days old. The letter also stated, "If you breach this agreement, I will be entitled to recover all costs of collection and enforcement, including reasonable attorney fees." It also informed the Cutlers of their outstanding balance of $38,657.85.

¶ 4     The letter concluded, "If this fee arrangement meets your approval, please sign the original acknowledgment below and return it to me in the enclosed, self-addressed envelope." The acknowledgment read, "I acknowledge, accept, and ratify the Representation Agreement identified above, including the outstanding balance owed and the increase in the standard

hourly rate effective January 1, 2000." On January 17, 2000, the Cutlers signed and returned the letter.

¶ 5    According to Griffin, between January 1 and December 1, 2000, the Cutlers' outstanding balance ballooned from $38,657.85 to $109,242.18. The parties disagreed at trial about how often billing statements were sent to the Cutlers. Griffin admitted that he fell behind on his billing statements in early 2000 but maintained that he started submitting regular billing statements again later that year. According to the Cutlers, billing statements came only sporadically. Griffin's final billing statement, dated February 1, 2002, describes his work to retrieve discovery documents from opposing counsel, at which point the outstanding balance stood at $125,851.10. The Cutlers paid a total of $5,300 to Griffin for his services in connection with *Li v. Cutler*.

¶ 6    Griffin eventually sued. Griffin prosecuted the case himself until trial, where he was represented by counsel. At trial he sought fees, costs, and prejudgment interest totaling more than $300,000, plus attorney fees and costs accrued in connection with the present action.

¶ 7    Following a two-day bench trial, the trial court denied all requested relief. As we read its ruling, the trial court relied on two separate grounds for doing so. With respect to the $38,657.85 acknowledged in the January 2000 engagement letter, the court's findings state that "even though the Cutlers signed this letter and even though they ratified the $38,000.00, the Court finds that the $38,000.00 was incurred under an oral agreement." It thus ruled that the four-year statute of limitations applied and that "the applicable statute of limitations [had] run on the $38,000." In addition, the court concluded that Griffin's "claims against [the Cutlers] fail on the basis of Utah Rule of Professional Conduct 1.5." It found that Griffin had failed to keep the Cutlers apprised of his fees; that he provided no billing statements between April 2000 and January 2006; that he abandoned collection efforts; that the fees were excessive; and that he had

exploited the *Li* lawsuit to generate legal fees—in short, that the fees were unreasonable.

ISSUES ON APPEAL

¶ 8    Griffin advances five contentions on appeal. First, he contends that the trial court erred in ruling as a matter of law that his claim against the Cutlers was barred by the four-year statute of limitations applicable to oral contracts.

¶ 9    Second, Griffin contends that the trial court failed to correctly apply the parol evidence rule, erroneously concluding that Griffin and the Cutlers had a contingent-fee arrangement.

¶ 10    Third, Griffin contends that the trial court exceeded the scope of its discretion in awarding him no attorney fees for his work in *Li v. Cutler*.

¶ 11    Fourth, Griffin contends that the trial court erred in awarding him no attorney fees in connection with the present litigation.

¶ 12    Finally, Griffin contends the trial court erred in denying his request for prejudgment interest on his accrued fees in *Li v. Cutler*.

ANALYSIS

I. Statute of Limitations

¶ 13    Griffin contends that the trial court erred in denying a portion of his claim for fees under the statute of limitations. Griffin reads the trial court's statute-of-limitations ruling to apply only to the $38,657.85 balance the Cutlers acknowledged in the January 2000 engagement letter. He notes that the court's discussion of the applicable statute of limitations contains "no reference to the attorney fees that accrued after the $38,657.85."

By the same token, having concluded that this portion of Griffin's claim was time-barred, the court had no need to consider whether these legal fees were otherwise recoverable. And indeed the court's later discussion of the reasonableness of Griffin's fees contains no explicit reference to his work before January 2000. Accordingly, like Griffin, we understand the trial court to have denied the $38,657.85, and only the $38,657.85, as falling outside the statute of limitations.

¶ 14   The application of a statute of limitations is a legal determination, which we review for correctness. *Ottens v. McNeil*, 2010 UT App 237, ¶ 20, 239 P.3d 308. However, "[t]o the extent that the statute of limitations analysis involves 'subsidiary factual determination[s],' we review those factual determinations using 'a clearly erroneous standard.'" *Id.* (second alteration in original) (quoting *Spears v. Warr*, 2002 UT 24, ¶ 32, 44 P.3d 742).

¶ 15   Two possible statutes apply to this dispute. The statute of limitations for actions based on an "instrument in writing" is six years:

> An action may be brought within six years . . . upon any contract, obligation, or liability founded upon an instrument in writing, except those mentioned in Section 78B-2-311 . . . .

Utah Code Ann. § 78B-2-309(2) (LexisNexis 2012). The statute of limitations for actions not based on an instrument in writing is four years after "the last charge is made or the last payment is received." *Id.* § 78B-2-307(1)(a).

¶ 16   Griffin's principal argument is that a 1993 engagement letter "established an open account for services" and that by suing within four years of the last charge on that account, he satisfied the four-year statute of limitations. He filed suit January 17, 2006; the last charge made on the account, according to Griffin, "is dated January 22, 2002." By his calculation, then, he made the four-year cutoff with several days to spare.

¶ 17 However, the trial court found that Griffin "did not provide those billing statements"—from April 2000 forward—"until January 2006." Griffin does not challenge this finding as clearly erroneous. In effect, then, Griffin contends that a creditor can restart the clock on a stale account by charging the account without informing the debtor until the time of suit—here, slightly less than four years later. Griffin did not advance this theory in the trial court and he does not support it with legal authority on appeal. An inadequately briefed claim is by definition insufficient to discharge an appellant's burden to demonstrate trial court error. *See Salt Lake County v. Butler*, 2013 UT App 30, ¶ 37 n. 5, 297 P.3d 38. Accordingly, Griffin fails to demonstrate that the trial court erred here.

¶ 18 Griffin next argues that the trial court should have applied the six-year statute governing written obligations rather than the four-year statute of limitations governing oral obligations. Subject to one exception inapplicable here, the six-year statute applies to "any contract, obligation, or liability founded upon an instrument in writing." Utah Code Ann. § 78B-2-309(2). Griffin sued six years to the day after the Cutlers signed the January 2000 engagement letter, seeking, in part, fees accrued and unpaid prior to that date. The first question, then, is whether Griffin sued on an instrument in writing.

¶ 19 In that letter, which the Cutlers agree they signed, they expressly acknowledged an outstanding balance of $38,657.85. Nevertheless, the trial court's findings state that "this was an oral contract" and that the Cutlers' acknowledgment of the outstanding balance "does not come as a new contract, from which a statute of limitations arises."

¶ 20 On appeal, Griffin cursorily challenges this conclusion. He asserts that he "filed this lawsuit on January 17, 2006, within the six-year statute of limitations for written contracts." He also notes that the trial court "seems to conclude that the 1993 fee agreement was an oral contract and apply the Utah Code . . . language on oral contracts not open accounts to conclude that the statute of limitations 'ran long ago.'" But Griffin does not

analyze the 1993 engagement letter under the rules of contract law; does not examine the statute governing written acknowledgements, *see* Utah Code Ann. § 78B-2-113 (LexisNexis 2012); and does not discuss the difference, if any, between a written obligation and a written acknowledgement of a prior oral obligation, *see Still v. Perroni Law Firm*, 385 S.W.3d 182, 189 (Ark. 2011) (holding that for purposes of the statute of limitations, a written acknowledgment of a debt does not convert an oral obligation into a written contract). Accordingly, we conclude that Griffin has not carried his burden on appeal of demonstrating trial court error.

¶ 21   We therefore affirm the trial court's denial, on statute of limitations grounds, of Griffin's claim for the $38,657.85 in fees accrued before, and acknowledged in, the January 2000 engagement letter. However, this ruling does not apply to fees accrued after that date. The balance of this opinion addresses those fees.

## II. Parol Evidence

¶ 22   Griffin contends that the trial judge misinterpreted and misapplied the parol evidence rule to the engagement letter, incorrectly relying on extrinsic evidence to conclude that the *Li v. Cutler* case became, in essence, "a contingency fee case and one that Griffin undertook largely on his own."[3] Read in context, the trial court found in effect that by abandoning his collection efforts Griffin waived his fee. However, Griffin has not provided, nor can we find, record evidence that this issue was preserved in the trial court.

---

3. A contingent fee is generally understood to mean "[a] fee charged for a lawyer's services only if the lawsuit is successful or is favorably settled out of court." *Black's Law Dictionary* 362 (9th ed. 2009). Contingent fees are usually "calculated as a percentage of the client's net recovery." *Id.*

¶ 23   "Generally, 'in order to preserve an issue for appeal the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue.'" *Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366 (quoting *Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶ 14, 48 P.3d 968). "The Utah Rules of Appellate Procedure also require that the appellant's brief provide a citation to the paginated record demonstrating where the issue was preserved, or demonstrate that the unpreserved issue meets an exception to the preservation rule." *Seamons v. Brandley*, 2011 UT App 434, ¶ 3, 268 P.3d 195.

¶ 24   Griffin has not provided a citation demonstrating where he presented this issue to the trial court. Nor does our review of the record reflect that Griffin ever argued below that the trial court "misinterpreted and misapplied" the parol evidence rule. Consequently, we decline to address this contention.

### III. Reasonableness of Fees Accrued After January 1, 2000

¶ 25   We now turn to the reasonableness of the fees accrued after the $38,657.85 acknowledged in the January 2000 engagement letter. As explained above, the trial court disallowed these fees on the merits rather than on the statute of limitations. Griffin contends that the trial court abused its discretion by failing to perform the requisite analysis in determining that his legal fees should be reduced to zero.[4] The trial court enjoys broad discretion in determining what constitutes a reasonable fee, and we consequently review that determination under an abuse-of-discretion standard. *Softsolutions, Inc. v. Brigham Young Univ.*, 2000 UT 46, ¶ 12, 1 P.3d 1095.

---

4. Griffin actually says that the trial court "exceeded the scope of its judicial authority" in denying his claim for fees. "A court wrongfully uses its judicial authority when it abuses its discretion." *Snow, Christensen & Martineau v. Lindberg*, 2013 UT 15, ¶ 21, 299 P.3d 1058.

¶ 26   Our supreme court established the proper analysis to determine the reasonableness of attorney fees in *Dixie State Bank v. Bracken*, 764 P.2d 985 (Utah 1988). In determining a reasonable fee, "as a practical matter the trial court should find answers to four questions":

> 1. What legal work was actually performed?
>
> 2. How much of the work performed was reasonably necessary to adequately prosecute the matter?
>
> 3. Is the attorney's billing rate consistent with the rates customarily charged in the locality for similar services?
>
> 4. Are there circumstances which require consideration of additional factors, including those listed in the Code of Professional Responsibility?

*Id*. at 990 (footnotes omitted). The Code of Professional Responsibility forbids a lawyer to "collect an unreasonable fee." Utah R. Prof'l Conduct 1.5(a). It lists eight "factors to be considered in determining the reasonableness of a fee":

> (a)(1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly;
>
> (a)(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (a)(3) the fee customarily charged in the locality for similar legal services;
>
> (a)(4) the amount involved and the results obtained;

(a)(5) the time limitations imposed by the client or by the circumstances;

(a)(6) the nature and length of the professional relationship with the client;

(a)(7) the experience, reputation and ability of the lawyer or lawyers performing the services; and

(a)(8) whether the fee is fixed or contingent.

*Id.* These eight factors "do not represent an exclusive list," and not every factor will be relevant in every case. *Long v. Ethics & Discipline Comm.*, 2011 UT 32, ¶ 45, 256 P.3d 206. Furthermore, although "the amount involved" appears on this list, our supreme court has advised that "care should be used in putting much reliance on this factor." *Dixie State Bank*, 764 P.2d at 990.

¶ 27 *Dixie State Bank* involved an award of fees against an opposing party. *Id.* at 986–88. However, as noted above, rule 1.5 requires the fees attorneys charge their own clients to be reasonable also. Accordingly, we conclude that the "practical guidelines" announced in *Dixie State Bank* apply here. *See id.* at 989.

¶ 28 "An award of attorney fees must be based on the evidence and supported by findings of fact." *Cottonwood Mall Co. v. Sine*, 830 P.2d 266, 268 (Utah 1992). The trial court "must make an independent evaluation of the reasonableness of the requested fees in light of the parties' evidentiary submissions." *Foote v. Clark*, 962 P.2d 52, 55 (Utah 1998). Factors such as those outlined in *Dixie State Bank* "should inform the court's meaningful appraisal." *Id.* Finally, the court's findings "should detail the factors considered dispositive by the trial court in calculating the award." *Id.*

¶ 29 The trial court here entirely disallowed Griffin's claim for legal fees. The court concluded that his claims "fail on the basis of Utah Rule of Professional Conduct 1.5"; that Griffin was

"seeking to collect too high [a fee] in this case"; that Griffin "had the ability to resolve the *Li v. Cutler* case early . . . at a relatively low cost" to the Cutlers; that "the length and nature of [their] professional relationship . . . simply do not justify the amount of the fees that [Griffin] is seeking"; that Griffin breached his duty of "giving [the Cutlers] information and keeping them abreast, including in writing"; and that Griffin failed to timely bill the Cutlers. Although the court did not use the word, it disallowed Griffin's fees on the ground that they were unreasonable.

¶ 30    Griffin argues on appeal that the trial court failed to engage in a *Dixie State Bank* analysis. He contends that "the lack of a disciplined and thorough *Dixie State Bank* analysis promoted an all-or-nothing approach and a result that is unreasonably harsh."

¶ 31    In fact, the trial court's findings are voluminous and address a majority of the factors identified in rule 1.5 of the Utah Rules of Professional Conduct. Although the ruling does not cite *Dixie State Bank*, the court placed heavy emphasis on the second *Dixie State Bank* factor, examining how much of the work Griffin performed was reasonably necessary to prosecute the *Li* case. *See Dixie State Bank v. Bracken*, 764 P.2d 985, 990 (Utah 1988). On that scale, the court concluded that Griffin's fees were "very excessive" and "seriously in excess" based on "what the *Li v. Cutler* case was really about." We thus do not agree that the trial court failed to apply the correct law in its determination of reasonableness.

¶ 32    Griffin also challenges the adequacy of the court's findings. He asserts that the court's findings "are rife with unsupported speculation." In addition, he asserts that the court's findings lack any "point-by-point analysis" or "evaluation of the entries" in his billing statements "to see if some were justified and reasonable." As a result of this lack of specificity, he argues, the court's "reasoning is not evident and Griffin is left in bewilderment at the result."

¶ 33   However, Griffin did not preserve this challenge to the court's findings. To preserve an appellate challenge to the adequacy of trial court findings, an appellant must first raise the objection in the trial court with sufficient clarity to alert the court to the alleged inadequacy. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 56, 99 P.3d 801. Griffin did object to the proposed findings and conclusions on various grounds, but not this one. Accordingly, his challenge to the adequacy of the court's findings fails.

¶ 34   We thus reject Griffin's challenges to the trial court's reasonableness determination with respect to fees accrued after January 2000.

### IV. Attorney Fees and Interest in the Present Action

¶ 35   Griffin also contends that his right to attorney fees incurred in prosecuting the present action was established at trial by "uncontroverted evidence of a binding, written contract." We note that although Griffin was represented by counsel at trial, he handled some or all the pretrial litigation himself.

¶ 36   Whether attorney fees are recoverable in an action is a legal determination, which we review for correctness. *Redd v. Hill*, 2013 UT 35, ¶ 15, 304 P.3d 861. "However, the [trial] court has broad discretion in determining what constitutes a reasonable fee, and we will consider that determination against an abuse-of-discretion standard." *Id.* (citation and internal quotation marks omitted).

¶ 37   "If the legal right to attorney fees is established by contract, Utah law clearly requires the court to apply the contractual attorney fee provision and to do so strictly in accordance with the contract's terms." *Jones v. Riche*, 2009 UT App 196, ¶ 2, 216 P.3d 357. However, "[a]n award of attorney fees must be based on the evidence and supported by findings of fact." *Foote v. Clark*, 962 P.2d 52, 55 (Utah 1998) (citation and internal quotation marks omitted).

¶ 38   Furthermore, pro se litigants may not recover attorney fees, even if the pro se litigant is a licensed attorney. *Strohm v. ClearOne Communications, Inc.*, 2013 UT 21, ¶ 92, 308 P.3d 424. "Because the lawyer-litigant's ability to competently present a claim without the aid of retained counsel is an inherent advantage, we are loath to enhance that advantage by giving the lawyer-litigant recovery not only as a successful party, but also as that party's attorney." *Id.* (citation and internal quotation marks omitted).

¶ 39   Here, the contract's terms, as stated in the January 2000 engagement letter, provide as follows: "If you breach this agreement, I will be entitled to recover all costs of collection and enforcement, including reasonable attorney fees." Griffin's right to recover any attorney fees at all thus depends on whether he has demonstrated breach.

¶ 40   As we noted above, we affirm the trial court's denial of fees accrued before the January 2000 engagement letter as time-barred, and of fees accrued after the letter as unreasonable. Accordingly, Griffin has failed to demonstrate breach. We thus conclude that the trial court properly denied Griffin's request for attorney fees accrued in prosecuting the present action.

## V. Prejudgment Interest

¶ 41   Finally, Griffin contends that he is entitled to prejudgment interest on his legal fees incurred in connection with *Li v. Cutler*. We review a trial court's decision to grant or deny prejudgment interest for correctness. *Smith v. Fairfax Realty, Inc.*, 2003 UT 41, ¶ 16, 82 P.3d 1064.

¶ 42   Prejudgment interest is appropriate "where the damage is complete and the amount of the loss is fixed as of a particular time, and that loss can be measured by facts and figures." *Bjork v. April Indus., Inc.*, 560 P.2d 315, 317 (Utah 1977). However, "a prevailing party may not receive prejudgment interest on attorney fees where the reasonableness of those fees is in dispute." *Kraatz v. Heritage Imports*, 2003 UT App 201, ¶ 65, 71

P.3d 188. "Such fees would be inappropriate for prejudgment interest because they are not fixed or calculable with mathematical certainty until the court makes an independent determination of their reasonableness." *Id.*

¶ 43    Here, we affirm the trial court's denial of prejudgment interest on two grounds. First, the reasonableness of those fees was disputed. *See id.* Second, because we affirm the trial court's denial of those fees, Griffin has no judgment to accrue interest in any event.

CONCLUSION

¶ 44    Griffin has not demonstrated on appeal that the trial court erred in dismissing his claim for $38,657.85 as time-barred. Nor has he demonstrated that the trial court erred in rejecting the remainder of his claimed fees as unreasonable. The judgment of the trial court is accordingly affirmed.

_____