2025 UT App 187

# THE UTAH COURT OF APPEALS

OREM CITY,
Appellee,
*v.*
DAVID AMMON JAKEMAN,
Appellant.

Opinion
No. 20241042-CA
Filed December 18, 2025

Fourth District Court, Spanish Fork Department
The Honorable Jared Eldridge
No. 221300408

David Ammon Jakeman, Appellant Pro Se

Aliisa N. Leon, Attorney for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES RYAN D. TENNEY and JOHN D. LUTHY concurred.

MORTENSEN, Judge:

¶1　In this consolidated appeal, David Ammon Jakeman challenges multiple continuous protective orders entered following his conviction on eight charges in several cases.[1] Jakeman raises arguments that he did not set forth in the proceedings before the district court, instead claiming that the court plainly erred in not anticipating the arguments he now raises on appeal. We affirm, concluding that Jakeman either invited the claimed error or otherwise fails to meet the requirements of a plain error claim.

---

1. Five cases involving repeated violations of protective orders were consolidated in this appeal.

BACKGROUND

¶2    In August 2023, Jakeman was convicted on eight domestic violence and violation of protective order charges in several different cases. Later, five sentencing protective orders (SPOs)—one for each case in which Jakeman was charged—were issued at the request of Orem City.[2]

¶3    In July 2024, Jakeman, acting pro se, filed a motion requesting modification of the SPOs. At a hearing in September, Orem City moved for five continuous protective orders (CPOs) to replace the SPOs, arguing that they should have been entered at the time of sentencing under the relevant statute.

¶4    The court denied Jakeman's requested modification to the existing SPOs. Instead, the district court replaced the SPOs by issuing five CPOs as requested by Orem City. The court noted that section 78B-7-804(3)(b) of the Utah Code indicates that "if a perpetrator is convicted of a domestic violence offense resulting in a sentence of imprisonment, including jail, that is to be served after conviction, the court shall issue a continuous protective order at the time of the conviction or sentencing." Given this statutory framework, the court agreed "that a continuous protective order could have and probably should have been

---

2. A sentencing protective order refers to "a written order of the court as part of sentencing in a domestic violence case that limits the contact an individual who is convicted or adjudicated of a domestic violence offense may have with a victim or other specified individuals under Section 78B-7-804." Utah Code § 77-36-1(12). While the statute does not explicitly state that a sentencing protective order may be continuous, there is no reason that a sentencing protective order cannot be continuous in nature. Indeed, it appears that there is generally no other option for protective orders issued in domestic violence cases that result in incarceration. *See id.* § 78B-7-804(3)(b).

issued at sentencing in this case, and it wasn't." The court concluded, "It's now being requested, and it appears . . . that a continuous protective order should issue . . . ." Jakeman now appeals.

ISSUES AND STANDARDS OF REVIEW

¶5    Jakeman first argues that the district court erred in issuing the CPOs without complying with section 78B-7-804(5) (Subsection (5)) of the Utah Code. Because this issue was not preserved, we review it under the rubric of plain error. A claim of plain error presents a question of law that we address in the first instance. *State v. Samora*, 2022 UT App 7, ¶ 16, 504 P.3d 195; *accord State v. Popp*, 2019 UT App 173, ¶ 19, 453 P.3d 657.

¶6    Jakeman next asserts that Subsection (5) is unconstitutional as applied to his case because the CPOs "resulted in the de facto termination of [his] parental rights without due process." Because this issue was not preserved, we again review it under the plain error doctrine.

ANALYSIS

I. The Applicability of Subsection (5)

¶7    Jakeman argues that the district court did not comply with the requirements of Subsection (5), which states,

> [A] district court may issue a continuous protective order at any time if the victim files a petition with the court, and after notice and hearing the court finds that a continuous protective order is necessary to protect the victim.

Utah Code § 78B-7-804(5). Jakeman asserts that "the district court issued CPOs even though none of the requirements [identified in Subsection (5)] for doing so had been met."

¶8 Jakeman claims the issue was preserved when he objected to Orem City's request for the CPOs as being "procedurally defective." We disagree. This generalized grievance provided no indication of Jakeman's claim on appeal that the requirements of Subsection (5) were not followed in issuing the CPOs. And in our reading of the record, we find no suggestion that Jakeman ever mentioned Subsection (5) or its requirements to the district court. "An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on it." *Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828 (cleaned up). But "[w]hen a party fails to raise and argue an issue in the trial court, it has failed to preserve the issue, and an appellate court will not typically reach that issue absent a valid exception to preservation." *State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443. Accordingly, we review this claim under a plain error rubric. *See State v. Flora*, 2020 UT 2, ¶ 9, 459 P.3d 975 (recognizing plain error as an exception to the preservation requirement).

¶9 Utah Code section 78B-7-804(3)(b) (Subsection (3)), which was the statute the district court invoked when it converted the SPOs to CPOs, provides,

> [I]f a perpetrator is convicted of a domestic violence offense resulting in a sentence of imprisonment, including jail, that is to be served after conviction, the court shall issue a continuous protective order at the time of the conviction or sentencing limiting the contact between the perpetrator and the victim unless: (i) the court determines by clear and convincing evidence that the victim does not . . . have a reasonable fear of future harm or abuse; and (ii) the court conducts a hearing.

Utah Code § 78B-7-804(3)(b). Jakeman himself recognized that Subsection (3) controlled the matter when he appeared in court on his motion to modify the SPOs. Indeed, he explicitly stated that the court had already issued CPOs as provided in Subsection (3):

> So [Orem] City has asked the Court to issue a continuous protective order. I just want to point out that that is totally ridiculous, because this Court has already done so. In fact, the proof that the Court has already done so is that the Court had no option . . . . It had to issue a continuing protective order, which you could also call a continuous sentencing protective order or a sentencing protective order that is continuous.

And later at the same hearing, he doubled down:

> You don't need to issue another protective order. Modify this one if you need; and here's why you don't need to [issue another protective order]. Because what you issue[d], though it says "Sentencing Protective Order," . . . *you had no choice but to issue a continuous protective order*, okay? The truth is they're the same. . . . The continuous protective order never expires, and this does not expire. It is a continuous sentencing protective order. So it's a subset of a sentencing order. It's just one that doesn't end.

(Emphasis added.) Jakeman was correct: the court had no choice but to enter a continuous protective order at the time of sentencing pursuant to Subsection (3). So, whatever the court or Orem City may have originally called the protective order, it was a *continuous* protective order. Indeed, after hearing Jakeman's explanation, the court agreed that Subsection (3) controlled the matter, stating that a continuous protective order was "appropriate under the statute" and that "a continuous protective

order could have and probably should have been issued at sentencing in this case."

¶10 Moreover, Jakeman's repeated assertions that CPOs were already in place supports our conclusion that the issue related to Subsection (5) was not preserved. Because Subsection (5) provides for the *issuance* of a continuous protective order, it is logically inconsistent to say that Jakeman raised the matter such that the court had the opportunity to rule on it when he insisted that a continuous protective order was *already in place*. Simply put, Subsection (5) does not appear to have been on Jakeman's radar below, and if it wasn't on his radar, he couldn't have expressed its applicability to the district court and thereby preserved it.

¶11 Because this issue wasn't preserved, the plain error doctrine is the only avenue available to Jakeman to challenge the court's ruling. To establish plain error, Jakeman "must show that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *State v. McNeil*, 2013 UT App 134, ¶ 24, 302 P.3d 844 (cleaned up), *aff'd*, 2016 UT 3, 365 P.3d 699. Given Jakeman's full-throated assertion before the district court that any protective order issued at the time of sentencing was continuous, we cannot say that the district court plainly erred in concluding that it was proper to issue a continuous protective order under the provisions set forth in Subsection (3). Thus, any error here was invited by Jakeman's insistence that the existing protective orders were continuous. *See Pratt v. Nelson*, 2007 UT 41, ¶ 17, 164 P.3d 366 ("Our invited error doctrine arises from the principle that a party cannot take advantage of an error committed at trial when that party led the trial court into committing the error. By precluding appellate review, the doctrine furthers this principle by discouraging parties from intentionally misleading the trial court so as to preserve a hidden ground for reversal on appeal." (cleaned up)); *see also State v. Moa*, 2012 UT 28, ¶ 27, 282 P.3d 985 ("Where a party makes an affirmative representation encouraging the court to proceed

without further consideration of an issue, an appellate court need not consider the party's objection to that action on appeal. The doctrine of invited error therefore can preclude even plain error review." (cleaned up)); *McNeil*, 2013 UT App 134, ¶ 24 (stating that "invited error precludes appellate review of an issue," even under plain error review). And inviting the error—inasmuch as there was error—is exactly what Jakeman did here.

¶12   Given the unavailability of plain error review in this matter, Jakeman's first claim—that the district court failed to comply with Subsection (5)—necessarily misses the mark.

## II. The Constitutionality of Subsection (5)

¶13   Jakeman next claims that Subsection (5) "is unconstitutional as applied" because it "resulted in the de facto termination of [his] parental rights without due process." As addressed above, Jakeman's Subsection (5) argument was not preserved. Even clearer is that Jakeman never raised the constitutionality of Subsection (5) before the district court.[3] "[U]npreserved federal constitutional claims are not subject to a heightened review standard but are to be reviewed under our plain error doctrine." *State v. Bond*, 2015 UT 88, ¶ 44, 361 P.3d 104. Similarly, "for unpreserved state constitutional questions, the

---

3. In his reply brief, Jakeman argues for the first time that Subsection (3) is "facially unconstitutional under both the due process and equal protection doctrines of the Utah Constitution and of the United States Constitution." This will not do. "Appellants are not permitted to raise matters for the first time in a reply brief. Indeed, when a party fails to raise and argue an issue on appeal, or raises it for the first time in a reply brief, that issue is waived and will typically not be addressed by the appellate court." *Chard v. Chard*, 2019 UT App 209, ¶ 34, 456 P.3d 776 (cleaned up). Accordingly, we decline to entertain this new assertion.

burden to prove plain error does not change: a defendant must demonstrate that an obvious and prejudicial error occurred." *Id.* ¶ 41 n.14.

¶14 We are hard pressed to see how any error in this regard—assuming one exists—would have been obvious to the district court because the law in this matter is far from settled. "Relief is not available via the plain-error doctrine unless defendants persuade us that the error they allege is supported on the basis of *settled* law." *State v. Robertson*, 2018 UT App 91, ¶ 24, 427 P.3d 361 (emphasis added) (cleaned up); *see also id.* ("The complexity of this analysis alone indicates that [the defendant] cannot meet the burden of showing plain error, because any alleged error would not have been obvious to the trial court."). Put simply, "to establish that the error should have been obvious to the trial court, the appellant must show that the law governing the error was clear at the time the alleged error was made." *State v. Roman*, 2015 UT App 183, ¶ 9, 356 P.3d 185 (cleaned up). "Thus, an error is not obvious if there is no settled appellate law to guide the trial court." *Id.* (cleaned up). That is precisely the case here—Jakeman has not pointed to any settled law to support his contention that an error was made.[4]

¶15 Given the absence of settled law on this point, the district court did not plainly err in failing to recognize the alleged

---

4. Jakeman points to a recent case from Texas holding that protective orders banning all communication between a parent and child for more than two years require meeting a standard of clear and convincing evidence because such orders impinge on fundamental rights of parents. *See Stary v. Ethridge*, 712 S.W.3d 584, 595–96 (Tex. 2025). This non-binding caselaw cannot support a conclusion of plain error since it does not create a condition where the alleged error Jakeman now raises would have been obvious to the district court.

unconstitutionality of Subsection (5) that Jakeman attempts to identify on appeal.[5]

### CONCLUSION

¶16 We affirm, concluding that Jakeman either invited the claimed error or otherwise fails to meet the requirements of a plain error claim.

_____

5. Jakeman requests attorney fees "in the amount" Orem City "would have paid to hire counsel for [Jakeman] if he had not represented himself." There are at least two problems with this request. First, Jakeman is the losing party in this matter and, second, "pro se litigants may not recover attorney fees, even if the pro se litigant is [an] attorney," as was the case here. *See Griffin v. Cutler*, 2014 UT App 251, ¶ 38, 339 P.3d 100.